**Rosalinda ALT, Plaintiff–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant–Appellee.**

No. 03–1265.

United States Court of Appeals, Sixth Circuit.

June 3, 2004.

Allan A. Ackerman, Chicago, IL, for Petitioner–Appellant.

B. John Williams, Jr., Internal Revenue Service, Office of Chief Counsel, Regina S. Moriarty, Teresa E. McLaughlin, U.S. Department of Justice, Washington, DC, for Respondent–Appellee.

Before SUHRHEINRICH and GIBBONS, Circuit Judges; and LAWSON, District Judge.*

SUHRHEINRICH, Circuit Judge.

Petitioner–Appellant Rosalinda Alt (Petitioner) appeals the Tax Court's decision that she is not entitled to innocent spouse relief from joint and several liability pursuant to 26 U.S.C. § 6015 for the taxable years 1982 through 1989. For the reasons that follow, we **AFFIRM** the decision of the Tax Court.

### I.  Facts

Petitioner is a seventy-six-year-old married woman. She received her bachelor's degree from Wayne State University in 1948 and her master's degree in education from the University of Michigan in 1953. In 1954, Petitioner married her husband, William J. Alt, M.D., a graduate of the University of Michigan medical school with a practice in the area of internal medicine and a specialty in cardiovascular disease. Petitioner and Dr. Alt have four children: Nan, Karen, Robert, and Gretchen. Although Petitioner had worked as a first grade teacher, subsequent to her marriage and the birth of her first child in 1955, Petitioner became a stay-at-home mother.

Throughout their marriage, Petitioner and Dr. Alt paid professionals to prepare their tax returns for them. When he began his medical practice, Dr. Alt hired Mr. Ron Schulz to prepare the family's tax returns. After Mr. Schulz retired in the early 1980s, Petitioner's daughter, Karen Lind Alt (Karen), who had started a financial corporation, K.L. Financial, managed Petitioner's and Dr. Alt's financial affairs, including preparing tax returns.

---

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

In the years following the assumption of her parents' financial concerns, Karen created more than forty corporations through which she funneled Dr. Alt's income, resulting in substantial tax deficiencies for the taxable years 1982 through 1989 (the years at issue).[1]

During the years at issue, Petitioner and Dr. Alt lived a "fine life." Dr. Alt drove a Ford Mustang and Petitioner had a Cadillac and a Buick. Each month Petitioner received approximately $4,000 in cash from Dr. Alt to pay the household expenses. Petitioner and Dr. Alt purchased numerous properties, including a 600–acre riverfront property on which they were constructing an approximately 10,000 square foot Georgian Mansion at an estimated cost of one to four million dollars. Dr. Alt attended continuing medical education courses approximately twice a month in various places, including New York City and Tucson, Arizona. Petitioner accompanied her husband on his trips approximately once per month. Petitioner was also able to purchase several valuable antiques through these years. In addition, Petitioner and Dr. Alt helped their children to purchase or remodel their houses by "giving them financial assistance," potentially in excess of $100,000. They also helped purchase or purchased a business for their son.

On or before April 15, 1985, the Commissioner issued a statutory notice of deficiency to Petitioner and Dr. Alt regarding the 1981 taxable year. Petitioner and Dr. Alt filed a petition with the Tax Court to contest the proposed determination of the 1981 income tax deficiency of approximately $83,655 and, in 1986, they executed a stipulated decision that the court entered accordingly. Petitioner testified before the Tax Court that she had "signed some-thing," but "[didn't] know the agreement I made" and "[didn't] have the capacity" to inquire. She also did not think that she had a duty to inquire.

On April 5, 1989, the Commissioner sent Petitioner and Dr. Alt a notice of deficiency for the 1985 taxable year in the amount of $68,123.95. The Commissioner also claimed additions to tax totaling $20,437.00 for negligence and substantial understatement of tax liability under 26 U.S.C. §§ 6653 and 6661.

Then, in 1990, Dr. Alt and Karen were indicted for tax evasion and various other federal crimes. After Dr. Alt and Karen were indicted but prior to the trial, Petitioner withdrew varying amounts of money from the corporations' "three different banks a day, three different times a week, for multiple weeks." The following year, Dr. Alt and Karen were convicted and imprisoned. In 1993, a panel of this court reversed their convictions on the ground of improper jury instruction and remanded the case. *United States v. Alt,* 996 F.2d 827 (6th Cir.1993). Although Dr. Alt and Karen were not retried, Dr. Alt ultimately pled guilty to a misdemeanor offense and was sentenced to time already served.

On October 10, 1991, the Commissioner sent Petitioner and Dr. Alt a notice of deficiency for the taxable years 1982, 1983, 1984, 1986, 1987, 1988, and a notice of increases in their deficiencies for the taxable years 1987 and 1988. The Commissioner also sent Dr. Alt a separate notice of deficiency for the taxable year 1989. On January 10, 1992, Petitioner and Dr. Alt jointly filed a petition with the Tax Court disputing the IRS's notices of deficiency. Dr. Alt filed a separate petition on January 13, 1992. Then on February 26, 1993, the parties filed a stipulation of set-

---

**1.** See *United States v. Alt,* 996 F.2d 827 (6th Cir.1993), and *United States v. Alt,* 83 F.3d 779 (6th Cir.1996), for a more detailed history of the tax deficiencies at issue in this case.

tlement with the Tax Court, in which Petitioner and Dr. Alt agreed that they were liable for the following deficiencies and additions to tax for the 1982, 1983, 1984, 1986, 1987, and 1988 taxable years:

| | | Addition to Tax (Based on former IRC) * | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b) | Sec. 6661 |
| 1982 | $78,510 | $39,255 | — | $19,628 |
| 1983 | $176,832 | $88,416 | — | $44,208 |
| 1984 | $160,17 | $80,085 | — | $40,043 |
| 1986 | $222,252 | $166,689 | — | $55,563 |
| 1987 | $230,686 | $173,014 | — | $57,671 |
| 1988 | $221,009 | — | $165,756 | $55,252 |

* Further additions to tax were applied to the taxable years 1982, 1983, and 1984 under Section 6653(b)(2), and to the taxable years 1986 and 1987 under Section 653(b)(1)(B). The amount is equal to 50 percent of the interest on the portion of the underpayment.

On April 27, 1993, the Tax Court entered a decision pursuant to this stipulation of settlement. Then, in March 1994, Petitioner and Dr. Alt moved to vacate the Tax Court's decision on the basis of the reversal of Dr. Alt's criminal conviction. The motion was denied. *Alt v. Commissioner*, 68 T.C.M. (CCH) 38 (1994).

In the meantime, on September 15, 1992, the IRS filed a civil suit against Petitioner and Dr. Alt in the United States District Court for the Western District of Michigan seeking a judgment to foreclose upon back taxes, various statutory penalties for fraud, understatement, negligence, and interest for the taxable years 1981 through 1989. The district court's judgment against Dr. Alt and Petitioner was upheld by this court in *United States v. Alt*, 83 F.3d 779 (6th Cir.1996). Petitioner and Dr. Alt's assets that were subject to collection by the judgment included, but were not limited to: Dr. Alt's pension fund of about $500,000; six houses, each valued at approximately $200,000; over 600 acres of riverfront property in Ottawa County, Michigan; a nearly-completed personal residence having a living space of approximately 10,000 square feet built on 600 acres of riverfront property; and antique furniture.

Following the seizure of their assets, Petitioner and Dr. Alt moved to a "dilapidated" house that had been bequeathed to a church. Dr. Alt reestablished his medical practice in 1995 after serving twenty-five months in prison, doing business as "Clinical Cardiology—Internal Medicine, P.C." in Holland, Michigan. Petitioner worked part-time as a receptionist at her husband's office and also worked a her daughter's office, Clinical Psychiatric Medicine in Grandville. Petitioner and Dr. Alt earned the following amounts:

| Year | Dr. Alt | Petitioner | Total |
|---|---|---|---|
| 1997 | $13,200 | $39,375 | $52,575 |
| 1998 | $35,246 | $105,655 | $140,901 |
| 1999 | $53,761 | $83,987 | $137,748 |
| 2000 | $100,800 | $74,154 | $174,954 |

All of Petitioner's and Dr. Alt's children are adults. They financially support no one other than each other. As of August 7, 2001, Petitioner's and Dr. Alt's income tax liabilities, including accrued interest and penalties, were:

| Year | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 | 1988 | Total |
|---|---|---|---|---|---|---|---|---|
| Liability | $300,685 | $627,885 | $507,073 | $184,043 | $676,255 | $648,735 | $567,747 | $3,512,423 |

On or about April 14, 2000, Petitioner filed a request for innocent spouse relief with the IRS. Petitioner requested relief under 26 U.S.C. § 6015(b), (c), and (f) for the taxable years 1982 through 1989. On August 29, 2000, IRS agent Susan Carene met with Petitioner to discuss the request. Carene determined that Petitioner was not entitled to relief under § 6015(b), (c) or (f). The IRS informed Petitioner, by two letters dated September 29, 2000, that she was not entitled to relief under § 6015(b), (c), and (f) for the taxable years 1982 through 1988, and that no relief was available under § 6015 for 1989 because Petitioner had not filed a joint return for that year. On October 30, 2000, the IRS received Form 12509, Statement of Disagreement, from Petitioner disputing the determinations. The IRS sent Petitioner a final notice on December 8, 2000, determining that she was not entitled to relief.

On March 2, 2001, Petitioner filed a petition with the Tax Court seeking review of the IRS's denial of innocent spouse relief under § 6015, and the matter proceeded to trial with the Petitioner representing herself. Petitioner was seventy-four years old at the time of the trial. She stated that she had lost her thyroid and was suffering from post-traumatic stress syndrome, anxiety, and depression. After the trial, the tax court entered a decision for the IRS finding that it was not inequitable to hold Petitioner liable for the tax deficiencies. The Tax Court stated:

> *Held, further*, P is not entitled to relief under I.R.C. sec. 6015 for 1989 because she did not file a joint return. *Raymond v. Commissioner*, 119 T.C. 191, 2002 WL 31371975, (2002).
>
> *Held, further*, pursuant to I.R.C. § 6015(b)(1)(D), P is not entitled to relief under I.R.C. § 6015(b) for taxable years 1982 to 1988 because, taking into account all facts and circumstances, it is not inequitable to hold P liable for the deficiencies.
>
> *Held, further*, pursuant to I.R.C. § 6015(c)(3)(A)(i), P is not entitled to relief under I.R.C. § 6015(c) for taxable years 1982 to 1988 because P and H are still married, have not separated, and remained members of the same household during the 12–month period preceding the filing of the election by petitioner.
>
> *Held, further*, R did not abuse his discretion in denying P relief under I.R.C. § 6015(f) for taxable years 1982 to 1988 because we held that, taking into account all facts and circumstances, it is not inequitable to hold P liable for the deficiencies under I.R.C. § 6015(b)(1)(D).

Petitioner appealed.

## II. Standard of Review

"This Court reviews the Tax Court's findings of fact for clear error and its application of law *de novo*." *Friedman v. Commissioner*, 216 F.3d 537, 541 (6th Cir. 2000). The Tax Court's denial of relief on the basis that it is not inequitable to hold Petitioner liable for the deficiencies is reviewed for clear error. *Silverman v. Commissioner*, 116 F.3d 172, 173 (6th Cir. 1997).

## III. Analysis

Petitioner raises one issue on appeal: whether the Tax Court erred in denying her innocent spouse relief under 26 U.S.C. § 6015. Petitioner does not specifically challenge the grounds on which the Tax Court denied her relief, namely, that it was not inequitable to hold her liable. Nevertheless, Petitioner argues that, because she was "reared in a culture that demanded women refrain from questioning [the] breadwinner regarding fiscal matters," she neither knew nor had reason to know of

the tax deficiencies and the Tax Court erred in finding that "taking into account all of the facts and circumstances ... it would not be inequitable to hold [her] liable for the deficiencies." *Alt v. Commissioner*, 119 T.C. 306, 313, 2002 WL 31828632 (2002).

A spouse who files a joint tax return is jointly and severally liable for the tax computed. 26 U.S.C. § 6013(d)(3). Relief from joint and several liability is available in limited circumstances pursuant to 26 U.S.C. § 6015(b), (c), or (f). The petitioner bears the burden of proving that she has met all the prerequisites for relief except as otherwise provided in § 6015. *Shea v. Commissioner*, 780 F.2d 561, 565 (6th Cir.1986).

### A. Section 6015(b)

A taxpayer is eligible for innocent spouse relief pursuant to § 6015(b) if the taxpayer meets five conditions:

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the

return he or she did not know, and had no reason to know, that there was such understatement;

(D) *taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement;* and

(E) the other individual elects ... the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election

Section 6015(b)(1) (emphasis added). As the Tax Court noted, since § 6015(b)(1)(D) is identical to the former § 6013(e)(1)(D)[2] except that "the other spouse" is replaced with "the other individual," cases interpreting former § 6013(e) are instructive in the present case.

The Tax Court denied Petitioner relief because it determined that she did not meet the requirements of subsection (D), that "taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement." Whether it is inequitable to hold an individual liable for a tax deficiency "requires a careful consid-

---

**2.** Former Section 6013(e)(1) provided:
  § 6013(e). Spouse Relieved of Liability in Certain Cases.—
  (1) In general.—Under regulations prescribed by the Secretary, if—
  (A) a joint return has been made under this section for a taxable year,
  (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,
  (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement,
  (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax

for such taxable year attributable to such substantial understatement,
  then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.
*Alt*, 119 T.C. at 313, n. 7. As the Tax Court noted, the new Section 6015 was enacted to replace former Section 6013(e) in order to make relief from joint and several liability more accessible. *Id.* (citing Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105–206, § 3201(a), 112 Stat. 734; H. Conf. Rept. 105–599, at 249 (1998), 1998–3 C.B. 747, 1003).

eration of all possible factors that are relevant" to the inquiry. *Silverman*, 116 F.3d at 175 (also stating that "[t]he innocent spouse provision should be construed and applied liberally in favor of those for whom it was designed to protect"). Those factors include: (1) the culpable spouse's wrongdoing directed toward the requesting spouse; (2) the requesting spouse's actual knowledge or reason to know of the tax deficiency; (3) the benefit the requesting spouse received from the tax deficiency in the past; (4) the requesting spouse and the culpable spouse's current marital status; and (5) the probable economic hardship that might be caused by the enforcement of joint and several liability. *Hayman v. Commissioner*, 992 F.2d 1256, 1262 (2d Cir.1993) (relevant factors regarding inequity including significant benefit to the requesting spouse and whether the deficiencies result from "concealment, overreaching, or any other wrongdoing on the part of the guilty spouse") (citation omitted); *Friedman v. Commissioner*, 53 F.3d 523, 532 (2d Cir.1995) (factors regarding the equity inquiry include any significant benefits the requesting spouse received as a result of the understatements, the requesting spouse's participation in wrongdoing, and the effect of a subsequent divorce or separation); *Reser v. Commissioner*, 112 F.3d 1258, 1269–70 (5th Cir. 1997) (stating that the factors in determining inequity include whether the requesting spouse significantly benefitted from the understatement of tax; whether the requesting spouse has been deserted, divorced or separated from the other spouse, and the probable hardships that would befall the requesting spouse if the liability were not relieved); Rev. Proc. 2003–61, § 4.03, 2003–32 I.R.B. 296, 2003 WL 21708514 (listing various factors in de-

termining equity, including marital status, economic hardship and knowledge or reason to know).[3]

## 1. Culpable Spouse's Wrongdoing

■ The first relevant factor in determining the equity of holding a taxpayer liable for the deficiency is "[w]hether the failure to report correctly tax liability results from 'concealment, overreaching, or any other wrongdoing' on the part of the 'guilty' spouse." *Hayman*, 992 F.2d at 1262. The record in this case does not contain any evidence that Dr. Alt either deceived Petitioner or concealed any information from her regarding their financial affairs or tax returns. Petitioner argues that the 1990 indictment charging Dr. Alt with conspiracy and substantive tax evasion counts is evidence of his concealment. However, although the original 1990 indictment might arguably demonstrate concealment from the IRS, it does not demonstrate that Dr. Alt concealed anything from Petitioner. In fact, during the years at issue, Petitioner made numerous deposits on behalf of Dr. Alt, and after his indictment but prior to the criminal trial Petitioner withdrew various amounts of money from the corporate entities' bank accounts. These acts, coupled with the fact that Petitioner signed the tax returns, undermine her concealment argument. In light of the lack of any evidence suggesting that Dr. Alt concealed his financial affairs from his wife, there is no clear error in the Tax Court's finding that there was no concealment.

## 2. Requesting Spouse's Actual Knowledge or Reason to Know

The second factor, which is closely related to the first, is whether the requesting spouse knew or had reason to know of the

---

**3.** Rev. Proc.2003–61 applies to § 6015(f) but the Tax Court has held that the equitable

factors considered under § 6015(b)(1)(D) are the same as those considered under § 6015(f).

deficiency. Although the Tax Court did not expressly address this issue, the factor is included in Section 6015(b) as a separate element, and it should not be minimized in making the inequity determination. "The standard to be applied in determining whether a taxpayer had reason to know of omissions is whether a *reasonable person under the circumstances of the taxpayer* at the time of signing the return could be expected to know of the omissions." *Shea,* 780 F.2d at 566 (quoting the Tax Court opinion). This requires a determination of (1) the circumstances that faced the requesting spouse, and (2) whether a reasonable person in the same position would have known of the omissions. The factors to be considered include:

> 1) the spouse's level of education; 2) the spouse's involvement in the family's business and financial affairs; 3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and 4) the culpable spouse's evasiveness and deceit concerning the couple's finances.

*Streck v. Commissioner,* 187 F.3d at 368, No. 98–1064, 1999 WL 427381, 1999 U.S.App. LEXIS 13623, at *8 (6th Cir. June 16, 1999) (citing *Shea,* 780 F.2d at 567).

Petitioner holds a bachelor's degree and a master's degree in education. When evaluating the weight to be given to education, courts have examined the type of education received, specifically, whether the education provided a "special knowledge of complex tax issues." *See Reser v. Commissioner,* 112 F.3d 1258, 1268 (5th Cir.1997) ("Reser's education, albeit advanced, provided her with no special knowledge of complex tax issue such as basis computation."). Petitioner's education provides no special knowledge of tax. However, lack of knowledge of the tax consequences of the income received, or of its proper treatment on the return, constitutes mere ignorance of law that, without more, cannot establish that the taxpayer lacked reason to know of the tax underpayment. *Mitchell v. Commissioner,* 292 F.3d 800, 803–04 (D.C.Cir.2002) (taxpayer who knew of the unreported funds was not entitled to relief despite the fact that she didn't know the funds constituted taxable income).

Second, although no evidence indicates that Petitioner was directly involved in the corporations created by Karen, the record does indicate that she was, to some extent, involved in the family's business and the family's financial affairs. Petitioner paid household expenses, she made deposits and withdrawals for Dr. Alt and Karen, and several corporations were her nominees.[4]

Furthermore, from at least 1975 through 1981, Petitioner and Dr. Alt had deficiencies/assessments determined on their filed tax returns in each year except 1978. Petitioner "was aware that things had happened in the past, but ... thought that they had all been settled." Moreover, during the years at issue, in 1985, Petitioner was aware that she and Dr. Alt had petitioned the Tax Court concerning their tax deficiencies in 1981. Although Petitioner's knowledge of previous tax deficiencies does not show knowledge regarding the 1982 through 1988 deficiencies, it does indicate that Petitioner was aware of the

---

**4.** Karen had listed her family members, including Petitioner, as officers of her corporations. Some of the corporations were nominees of Petitioner and Dr. Alt. Petitioner and Dr. Alt paid their personal expenses, such as utilities, clothes and trips, through the corporate bank accounts. They did not have personal accounts. Petitioner also made deposits to the corporate bank accounts on behalf of Dr. Alt and Karen whenever she was asked to do so.

family finances and should have been alert to other problems.

Third, although the living style of Petitioner and Dr. Alt was good prior to the years at issue, the family expenditures during the years at issue were unusually lavish when compared to the past, as evidenced by the purchases or renovations of several parcels of real estate for themselves and for their children, as well as their substantial financial assistance to their children. Fourth, as stated previously, there is no evidence of either evasiveness or deceit on the part of Dr. Alt.

The next inquiry is whether a reasonable person faced with these circumstances would know of the omissions.

A person has reason to know of a fact if he had information from which *a person of ordinary intelligence* which such person may have, or of *the superior intelligence* which such person may have, would infer that the fact in question exists or that there is such a substantial chance of its existence that, *in exercising reasonable care with reference to the matter in question,* his action would be predicated upon the assumption of its possible existence.

*Shea,* 780 F.2d at 565 (quoting *Sanders v. United States,* 509 F.2d 162, 167 (5th Cir. 1975) (emphasis added)). This passage suggests two related factors. First, if a person possesses ordinary or greater intelligence, and second, if that person has information from which an individual exercising reasonable care would conclude that the ultimate fact exists, a court may infer that the person knew or should have known the ultimate fact.

Based on the information in the record, we believe that a reasonable person in Petitioner's situation would have known of the tax deficiencies. Not only was Petitioner involved to some extent in the business activities of her daughter's corpora-

tions, but she was aware of the ongoing tax problems of her family, both prior to and during the years at issue. Furthermore, there is no evidence of concealment and Petitioner had witnessed the unusual expenditures of the family during the years at issue. A reasonable person with Petitioner's intelligence and education alone might not have been expected to know of the omissions, but suspicious situations in the instant case should have led to further inquiry and discovery of the omissions.

Although Petitioner alleges that she had no capability to inquire into pertinent financial records, she also admitted that she never felt that she had such a duty, and apparently she never tried. Petitioner argues that she was reared in a culture that demanded that women refrain from questioning their breadwinner regarding fiscal matters. The essence of Petitioner's argument is that she had no duty to exercise reasonable care because she was taught not to do so. "Reasonable prudence," however, must be determined based on the conduct of a reasonable person. Petitioner's argument is merely an explanation for her personal lack of actual knowledge, and does not relate to what a reasonable person would have known.

The present case is similar to *McGee v. Commissioner,* 979 F.2d 66 (5th Cir.1992), where:

Taxpayer was aware that her husband earned income from his dental practice, although she did not know the exact amount. She was aware of [her husband's] irresponsible behavior in financial matters, yet never questioned him regarding the amounts he earned from his dental practice or whether tax returns were being timely filed. She made no effort to review tax documents before signing them. Furthermore, taxpayer testified at trial that she could have determined [her husband's] income

for the years at issue by asking [her accountant].

*Id.* at 70. The Fifth Circuit found that "[the taxpayer] did not act as a reasonably prudent person with an equal level of knowledge would under the surrounding circumstances with regard to determining the amount of [her husband's] income for the years in question" and that the Tax Court did not commit clear error in finding that taxpayer knew or should have known of the item of community income and denying innocent spouse relief. *Id.* Similarly, it would not be clear error to find that Petitioner knew or should have known of the deficiencies.

### 3. Significant Benefit

The third factor in determining the equities is the existence of a significant benefit to the spouse claiming relief as a result of the tax deficiency. *Silverman,* 116 F.3d at 175. "Normal support, measured by the circumstances of the parties, is not considered a significant benefit for purposes of this determination." *Friedman,* 53 F.3d at 532. (citation omitted). "However, amounts received by a spouse in excess of normal support do constitute a significant benefit." *Resser v. Commissioner,* 74 F.3d 1528, 1543 (7th Cir.1996) (citation omitted). "A direct or indirect benefit may be evidenced by (1) a transfer of property, [ ] (2) a spouse's receipt of more than she otherwise would as part of a divorce settlement, [ ] or (3) an accumulation of savings or other assets in lieu of present consumption. [ ] This list, however, is not exclusive." *Reser,* 112 F.3d at 1270. (footnotes omitted).

The Tax Court found that Petitioner benefitted significantly from the tax understatement. Petitioner's family's living style changed substantially during the years at issue as compared to the past. Prior to the years at issue, Petitioner and Dr. Alt owned a 2,500–square–foot home

built in 1966. They fully paid for their children's tuition and living expenses to attend college, for Nan to go to medical school, and for Karen to go to law school. They also bought a condominium for Dr. Alt's mother. The family took a ten-day vacation to Italy in 1971.

During the years at issue, Dr. Alt had a pension fund of $500,000. He drove a Mustang, and Petitioner drove a Cadillac and a Buick. Petitioner received cash in the amount of approximately $4,000 per month from Dr. Alt to pay the monthly household expenses. Petitioner went on a trip approximately once per month with her husband, while he took medical courses around the country. Petitioner was also able to purchase valuable antiques through all these years. In addition, the family purchased a 600–acre riverfront property on which an approximately 10,000 square foot Georgian Mansion was being built at an estimated cost of one to four million dollars. Furthermore, Petitioner and Dr. Alt either purchased houses for their children or helped them renovate their houses with extremely generous financial assistance. The family's unusual expenditures demonstrate a substantially enhanced living standard as compared to the past.

In sum, Petitioner and Dr. Alt accumulated assets with the savings from the tax deficiencies. Petitioner enjoyed the "fine life" to the same extent as her husband and held similar expectations regarding their accumulated assets to be enjoyed in the future. Thus the Tax Court's finding that the Petitioner benefitted from the tax savings is not clearly erroneous.

### 4. Marital Status

The fourth relevant factor is "whether the spouse seeking relief has been deserted or divorced or separated from the other spouse." *Reser,* 112 F.3d at 1270. Peti-

tioner and Dr. Alt have remained married and "Petitioner has not been left by her husband to deal with the tax liabilities alone." 119 T.C. 306, 315, 2002 WL 31828632 (2002). The Tax Court found that "petitioner continues to enjoy the lifestyle and financial security that are largely attributable to her husband's assets and income." *Id.* Both Petitioner and Dr. Alt are currently working. Petitioner works as a receptionist for her daughter and for her husband. In 2000, Petitioner and Dr. Alt had a combined income of $174,954. Therefore, the current marriage status also weighs against Petitioner, and the Tax Court's finding in this regard was not clear error.

### 5. Probable Economic Hardship

The fifth factor to be considered is the probable economic hardship on the requesting spouse. *Shea,* 780 F.2d at 564 (stating that the former 6013(e)(1) "was adopted to prevent hardships which resulted when one spouse did not report income, thereby leaving the 'innocent spouse' to pay the deficiencies"); *Reser,* 112 F.3d at 1270 (considering as a relevant factor in determining inequity the probable hardships that would befall the requesting spouse). Petitioner presented no convincing evidence regarding any economic hardship that might result from the tax liability, as economic hardship generally refers to the inability to pay reasonable basic living expenses. *See* Treas. Reg. § 301.6343–1(b)(4).[5]

Petitioner and Dr. Alt had accumulated tax deficiencies as of 2001 totaling

---

5.  Treas. Reg. § 301.6343–1(b)(4) provides:
    Economic hardship—(i) General rule. The levy is creating an economic hardship due to the financial condition of an individual taxpayer. This condition applies if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living ex-

$3,512,423. Petitioner testified that, after the IRS seizure, they were forced to move into a dilapidated church house, she suffered some illnesses, she has Medicare but no other health insurance, and she cannot get credit. Petitioner and Dr. Alt's annual income from 1998 to 2000, however, was $140,901, $137,748, and $174,954 respectively. The Tax Court did not clearly err in finding that the family will be able to pay reasonable basic living expenses if relief is not granted.

The Tax Court's conclusion that it would not be inequitable to hold Petitioner liable for the deficiencies is well supported by the five factors that we used to make that determination. First, even if Petitioner did not know of the deficiencies, she at least had reason to know since there is no evidence of concealment. Second, there is evidence that Petitioner significantly benefitted from the deficiencies as a family member during the years at issue. Lastly, Petitioner and Dr. Alt are still married and there is no evidence of a probable economic hardship on Petitioner. Under all these circumstances, the Tax Court did not clearly err in finding that, taking into account all facts and circumstances, it is not inequitable to hold Petitioner liable for the deficiencies. Since Petitioner does not meet the requirement of § 6015(b)(1)(D), she is not eligible for the mandatory relief under § 6015(b).

### B. Section 6015(f)

Section 6015(f) provides relief at the discretion of the Secretary if a taxpayer establishes two elements:

---

penses. The determination of a reasonable amount for basic living expenses will be made by the director and will vary according to the unique circumstances of the individual taxpayer. Unique circumstances, however, do not include the maintenance of an affluent or luxurious standard of living.

(f) Equitable relief.—Under procedures prescribed by the Secretary, if—

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

As the Tax Court noted, § 6015(b)(1)(D) is identical to § 6015(f)(1) except that *"the deficiency in tax for such taxable year attributable to such understatement"* is replaced with "any unpaid tax or any deficiency (or any portion of either)" in § 6015(f)(1). Therefore, the factual finding under I.R.C. § 6015(b)(1)(D), that taking into account all facts and circumstances it is not inequitable to hold Petitioner liable for the deficiencies, also applies to § 6015(f)(1). Since Petitioner does not meet the requirements of § 6015(b)(1)(D), she is not eligible to be considered for the Secretary's discretionary relief under § 6015(f)(1).

## C. Section 6015(c)

Initially, Petitioner brought a claim under § 6015(c) as well. The Tax Court concluded that Petitioner was not entitled to relief under this section because she was married to Dr. Alt at the time she filed her petition, had not separated from him, and had lived in the same household during the twelve-month period preceding the filing.[6] Since Petitioner does not challenge the Tax Court's factual finding regarding her marital status, which disqualifies Petitioner from relief pursuant to § 6015(c)(3)(A)(i), this Court need not address the issue.

## D. 1989 tax return

For the tax years 1982 through 1988, Petitioner and Dr. Alt filed their United States Individual Income Tax Returns as "married filing joint return." For the 1989 tax year, however, only Dr. Alt signed the tax return. According to IRS records, Petitioner did not file a federal income tax return in her own name for 1989. Therefore, the IRS construed Dr. Alt's return as filed "married filing separate." Petitioner agrees that "this appeal cannot serve to discharge any I.R.S. deficiency for 1989." Therefore, this Court need not address this issue.

## IV. Conclusion

For the foregoing reasons, the judgment of the Tax Court is **AFFIRMED.**

---

6. Section 6015(c)(3)(A)(i) provides:

    (i) In general.—An individual shall only be eligible to elect the application of this subsection if—

    (I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

    (II) such individual was not a member of the same household as the individual with whom such joint return was filed at any time during the 12–month period ending on the date such election is filed.