T.C. Summary Opinion 2009-6


UNITED STATES TAX COURT


JENEAN DYAN SIMMONS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10353-07S.                Filed January 8, 2009.


Jenean Dyan Simmons, pro se.

Julie A. Jebe, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The central issue in this case is whether petitioner is entitled to relief from joint and several liability for 1988 under section 6015(b) rather than under section 6015(c). Related to that issue is a determination of whether a refund is due petitioner under section 6015(g).

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time she filed the petition, Jenean Dyan Simmons resided in Illinois.

Petitioner and her now ex-husband married in 1969 and divorced in the 1990s. During the taxable year at issue (1988) and for some time thereafter, petitioner, although primarily a homemaker, worked as a secretary in her then husband's independent insurance sales business. Her role at the company was solely clerical: She filled out insurance applications and submitted them to carriers. Petitioner was not paid for this work but instead received a biweekly allowance ($50) from her ex-husband with which to purchase groceries and other household items.

The record reveals that petitioner's ex-husband had some real estate dealings on the side, unconnected with his insurance business.  The transactions were conducted in his name alone, without petitioner's knowledge or consent.

Petitioner and her ex-husband late filed a joint Federal income tax return for 1988, reporting zero tax due.  The return --prepared by a professional accountant at the direction of petitioner's ex-husband--was subsequently examined and the amount of tax revised.  The $14,418 due stemmed from the real estate transactions executed solely by petitioner's ex-husband and omitted from the late-filed return.  The tax due was assessed in May 1992.

Respondent levied on petitioner's wages at various places of employment in order to collect the outstanding liability, presumably because petitioner's ex-husband had suffered severe health problems and a bankruptcy.

Petitioner filed a Form 8857, Request for Innocent Spouse Relief, for 1988 on November 12, 2002.[2]  Although this request was ultimately granted, respondent initially denied the request as untimely.  See, e.g., sec. 6015(b)(1)(E).  Petitioner refiled

---

[2]  Although petitioner may have made a request for relief under sec. 6013(e) in 1994, the first complete and definitive request for innocent spouse relief and claim included in the record was the Form 8857 filed in 2002.

her request on April 15, 2006,[3] and, in early 2007, petitioner was granted full and complete relief from the 1988 liability under section 6015(c). Respondent denied petitioner's request for relief under section 6015(b), determining that she "knew or had reason to know" of her husband's business dealings giving rise to the understatement because petitioner signed the return and had been employed by her ex-husband's insurance business.

Because petitioner already paid some portion of the 1988 liability before being granted relief, she requested a refund of the amount paid.[4] Respondent denied the request as refunds are not permitted when relief is granted under section 6015(c). See sec. 6015(g)(3); cf. sec. 6015(g)(1) (permitting the possibility of refund when relief is granted under sec. 6015(b)).

The central issue before us is whether petitioner is entitled to relief from joint and several liability under section 6015(b). Because we decide that she is, we must also address whether a refund is due petitioner under section 6015(g).

---

[3] In 2004, this Court held that it was inequitable to require that a taxpayer file a request for innocent spouse relief within 2 years of the beginning of collection activity when the collection notice did not inform the taxpayer of his or her right to seek innocent spouse relief. See McGee v. Commissioner, 123 T.C. 314 (2004).

[4] Petitioner requested a refund of $21,237.68.

## Discussion

A. Relief From Joint and Several Liability

Section 6015 applies to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, but remaining unpaid as of such date. Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201(g), 112 Stat. 740. Except as otherwise provided in section 6015, the taxpayer bears the burden of proving his or her entitlement to relief under section 6015. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due. Sec. 6013(d)(3); see sec. 1.6013-4(b), Income Tax Regs. Section 6015 provides three avenues for relief from that liability (often referred to as innocent spouse relief) to a taxpayer who has filed a joint return: (1) Section 6015(b) allows relief for understatements of tax attributable to certain erroneous items on a return; (2) section 6015(c) provides relief for a portion of an understatement of tax to taxpayers who are separated or divorced; and (3) section 6015(f) more broadly confers on the Secretary discretion to grant equitable relief to

taxpayers who otherwise do not qualify under section 6015(b) or (c). See also sec. 6015(e).

Section 6015(c) relief (which petitioner was granted) allows for proportionate tax relief (if a timely election is made) through allocation of the deficiency between individuals who filed a joint return and are no longer married, are legally separated, or have been living apart for a 12-month period. Generally, this avenue of relief allows a spouse to elect to be treated as if a separate return had been filed. Rowe v. Commissioner, T.C. Memo. 2001-325. Here, the entire understatement was attributable to petitioner's ex-husband.

Although respondent chose to grant petitioner relief under section 6015(c) for 1988, relief under section 6015(b) would have been more appropriate. Section 6015(b) provides full or apportioned relief from joint and several liability for tax (including interest, penalties, and other amounts) to the extent that such liability is attributable to an understatement of tax. To be eligible for relief, the requesting spouse must establish that in signing the return, he or she "did not know, and had no reason to know" of the understatement. Sec. 6015(b)(1)(C), (2). Petitioner sufficiently established both that she had no knowledge of the understatement and that she had no reason to know of the understatement, for 1988.

Although petitioner did sign the joint return, she had no involvement with its preparation, and was not privy to any of the details that comprised the return. She signed the return simply because she was married during the taxable year. Further, the fact that she worked at her ex-husband's insurance company filling out insurance applications does not dictate that she had reason to know of his unrelated real estate activities, or that she knew (or had reason to know) of those real estate activities sufficiently to say that she should have known about the understatement of tax stemming from them. Petitioner was not paid for her work at the insurance agency, nor was she given meaningful access to (much less a say in) her family's financial affairs; petitioner's ex-husband merely gave her a modest allowance. Petitioner did not know about the understatement, nor did she have reason to. Respondent's refusal to grant relief under section 6015(b) was inappropriate under the circumstances.

B. The Refund Amount

Section 6015(g) governs the allowance of credits and refunds in cases where a taxpayer is granted relief under section 6015. Any refund available to a taxpayer is subject to limitations imposed by section 6511, 6512(b), 7121, or 7122. The only limitation applicable to this case is section 6511.[5]

---

[5] Sec. 6512(b) limits the amount of a refund in a deficiency proceeding, sec. 7121 applies to cases involving
(continued...)

Section 6511 generally limits the amount of a refund to amounts paid within 3 years from the time the return is filed or 2 years from the time the tax was paid, whichever period expires later. Section 6511(b)(2)(B) provides that if a claim is not filed within the 3-year period specified in section 6511(a), any refund should not exceed the amount of tax paid in the 2 years immediately preceding the filing of the refund claim.

A claim for a tax refund must inform the IRS that a claim for a refund is being asserted, detail the ground for the refund, and provide sufficient facts so the IRS can adequately examine the merits of the claim. See, e.g., Washington v. Commissioner, 120 T.C. 137, 160 (2003) (citing Chicago Milwaukee Corp. v. United States, 40 F.3d 373, 375 (Fed. Cir. 1994)); see also sec. 301.6402-2(b)(1), Proced. & Admin. Regs. In this case, petitioner's refund claim was made at the time she filed the first Form 8857 on November 12, 2002. Accordingly, any potential refund would be limited to payments made on or after November 12, 2000.

At trial, respondent argued that any refund to petitioner should be limited to payments made up until the date of her request for innocent spouse relief, i.e., November 12, 2002. That said, respondent acknowledged on brief that it would be more

---

⁵(...continued)
closing agreements, and sec. 7122 applies to cases involving compromises.

appropriate to refund payments made during the 2 years preceding-
-as well as all payments made after--the filing of petitioner's
request for innocent spouse relief.  See, e.g., <u>Washington v.
Commissioner</u>, <u>supra</u> at 162; <u>Rivera v. Commissioner</u>, T.C. Memo.
2005-33.  Therefore, any amounts paid by petitioner after
November 12, 2000, on the 1988 liability should be eligible for a
refund.

Given our holding that petitioner is eligible for relief
under section 6015(b), petitioner is entitled to a refund
pursuant to section 6015(g).

At trial, respondent stated that petitioner would be
entitled to a refund of $5,342.  In contrast, in posttrial
briefs, respondent stated that petitioner had provided "copies of
additional checks not previously considered by respondent" and
that, on the basis of this information, petitioner would be
entitled to a refund of $3,779.  The Court does not understand
why petitioner's refund would have decreased in view of the fact
that respondent conceded that payments from a longer time period
are eligible for refund and that petitioner provided respondent
with additional documentation.  But it is clear that a refund is
due petitioner.

## Conclusion

For the reasons discussed above, petitioner is entitled to
relief from joint and several liability for 1988 under section

6015(b).  Accordingly, petitioner is entitled to a refund under section 6015(g).

To reflect the proper amount of that refund,

<u>Decision will be entered</u>

<u>under Rule 155</u>.