T.C. Summary Opinion 2010-106

UNITED STATES TAX COURT

MAGDALENE H. SMOLEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13018-08S.                    Filed July 29, 2010.

<u>Matthew F. Sarnell</u>, for petitioner.

<u>Michelle Maniscalco</u>, for respondent.

WELLS, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other

_____

[1]All section references are to the Internal Revenue Code in
effect at all relevant times.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

case. This case arises from a request for relief pursuant to section 6015(f) with respect to petitioner's joint income tax liability for 2005. Respondent determined that petitioner was not entitled to relief from joint and several liability under section 6015(f). Petitioner timely filed a petition with the Court. The issue to be decided is whether petitioner is entitled to equitable relief under section 6015(f) for her 2005 tax year.

## Background

Some of the facts and certain exhibits have been stipulated. The facts stipulated by the parties are incorporated herein by reference and found accordingly. At the time the petition was filed, petitioner resided in New York.

Petitioner and her husband, Robert Dreilinger, were married in 1999. Mr. Dreilinger worked as an emergency room physician until he suffered a permanent disability in 2003. Mr. Dreilinger suffers from back problems. Petitioner is employed as an assistant administrator at a nursing home. Petitioner continues to live with and file joint tax returns with Mr. Dreilinger.

Petitioner and Mr. Dreilinger maintain separate bank and brokerage accounts. Petitioner owns their home and pays all of their living expenses. During late 2003 Mr. Dreilinger began receiving disability payments. In the preparation of their 2003 Federal income tax return (2003 return), Mr. Dreilinger omitted an income item.

Petitioner and Mr. Dreilinger filed a joint Federal income tax return for their 2005 tax year (2005 return). During 2005 Mr. Dreilinger received distributions from his retirement accounts that were not reported on their joint income tax return.[2]

On March 12, 2007, respondent mailed Notice CP2000 for petitioner's 2005 tax year, indicating an increase in tax of $12,894, a payment increase of $707, penalties of $2,437 and interest of $1,170 for a total proposed balance due of $15,794. On March 22, 2007, petitioner and Mr. Dreilinger signed Notice CP2000 indicating that they agreed with the total proposed balance due.

On May 16, 2007, petitioner signed and submitted to respondent Form 8857, Request for Innocent Spouse Relief, for her 2005 tax year. On Form 12510, Questionnaire for Requesting Spouse, petitioner indicated that Mr. Dreilinger denied receiving any unreported income and that she has no access to Mr. Dreilinger's accounts.

Respondent denied petitioner's request for section 6015(f) relief, stating that the claim did not meet the statutory requirements. Petitioner filed Form 12509, Statement of

---

[2]Petitioner concedes that these amounts should have been included on her and Mr. Dreilinger's joint Federal income tax return but contests her responsibility for the tax associated with the unreported retirement income.

Disagreement, claiming that Mr. Dreilinger wrote to respondent that petitioner had no knowledge of the unreported income and that he was taking full responsibility.

Respondent's Appeals Officer Mary Ann Halloway (Ms. Halloway) reviewed petitioner's Form 12509. According to Ms. Halloway's notes, Mr. Dreilinger omitted $46,413 of retirement income from the 2005 return. Ms. Halloway discovered that Mr. Dreilinger had unreported retirement income for 2004 as well. On the basis of her review of the record, Ms. Halloway determined that petitioner was ineligible for innocent spouse relief pursuant to section 6015(f). Petitioner timely filed a petition in this Court requesting relief pursuant to section 6015(f).

## Discussion

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income and liability for the resulting tax is joint and several. See also sec. 1.6013-4(b), Income Tax Regs. However, section 6015(a) allows an individual who has filed a joint return to seek relief from joint and several liability. A requesting spouse may seek either (1) relief from liability pursuant to section 6015(b) if he or she can show that he or she did not know or have reason to know of unreported income or inflated deductions; or (2) to have the tax liability allocated between the requesting spouse and his or her estranged or former spouse pursuant to section 6015(c).

See Billings v. Commissioner, 127 T.C. 7, 11 (2006).  A requesting spouse may also seek relief pursuant to section 6015(f) if he or she is ineligible for relief pursuant to subsection (b) or (c) and can show that "'taking into account all the facts and circumstances, it is inequitable to hold [him] liable for any unpaid tax or deficiency (or any portion of either).'"  See Billings v. Commissioner, supra at 11 (quoting section 6015(f)) (alteration in original).  Petitioner makes her claim for innocent spouse relief under section 6015(f).

Except as otherwise provided in section 6015, the requesting spouse bears the burden of proof.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  We apply a de novo standard and scope of review to the Commissioner's determinations pursuant to section 6015(b), (c), and (f).  Porter v. Commissioner, 132 T.C. 203, 210 (2009); Alt v. Commissioner, supra at 313-316.

Relief pursuant to section 6015(b) or (c) is premised on the existence of a deficiency or an understatement of tax.  Sec. 6015(b)(1)(B), (c)(1); Block v. Commissioner, 120 T.C. 62, 65-66 (2003).  The parties agree that petitioner is not eligible for relief pursuant to section 6015(b) or (c), and petitioner seeks relief only pursuant to section 6015(f).

The Commissioner has issued revenue procedures listing the factors to be considered in considering relief under section

6015(f).  Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.[3]  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth seven threshold conditions that individuals seeking relief under section 6015(f) must satisfy.  Respondent concedes that petitioner satisfies each of the seven threshold conditions.

Additionally, Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth a safe harbor in which relief will ordinarily be granted under section 6015(f) with respect to an underpayment of a properly reported liability.[4]  To qualify for relief under Rev. Proc. 2003-61, sec. 4.02(1), the requesting spouse must:  (1) No longer be married to, be legally separated from, or not have been a member of the same household as the other spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when signing the returns that the other spouse would not pay the tax

---

[3]The guidelines set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296, are effective for requests for relief filed, as in the instant case, on or after Nov. 1, 2003.  Id.  Sec. 7, 2003-2 C.B. at 299.

[4]We note that petitioner signed Notice CP2000, agreeing to the increase in tax.  We need not decide whether the signing of the Notice CP2000 recharacterized the joint income tax liability in issue from an understatement or deficiency to an underpayment, because petitioner is ineligible for relief under the factors set forth in Rev. Proc. 2003-61, sec. 4.02 and 4.03, 2003-2 C.B. at 298-299.  While a conclusion that an understatement or a deficiency existed would allow petitioner to claim relief pursuant to sec. 6015(b), the parties have agreed that petitioner is not entitled to relief under sec. 6015(b).

liability; and (3) suffer economic hardship if relief is not granted. Petitioner and Mr. Dreilinger are not divorced, legally separated, or no longer members of the same household. Accordingly, petitioner is not entitled to relief under the safe harbor of Rev. Proc. 2003-61, sec. 4.02.

Where the requesting spouse fails to qualify under Rev. Proc. 2003-61, sec. 4.02, the Commissioner may still grant equitable relief under section 6015(f). Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, contains a nonexclusive list of factors that the Commissioner will take into account in determining whether to grant equitable relief. Those factors are: (1) Marital status; (2) economic hardship; (3) in the case of an underpayment, knowledge or reason to know that the nonrequesting spouse would not pay the liability, or in the case of a liability that arose from a deficiency, knowledge or reason to know of the item giving rise to the deficiency; (4) the nonrequesting spouse's legal obligation; (5) significant benefit; and (6) compliance with income tax laws. Id. sec. 4.03(2)(a). We consider those factors and any other relevant facts and circumstances in determining whether the taxpayer is entitled to innocent spouse relief. Sec. 6015(f). No single factor is determinative, and all factors are to be considered and weighed appropriately. See Haigh v. Commissioner, T.C. Memo. 2009-140.

The first factor addresses the requesting spouse's marital status.  Petitioner remains married to Mr. Dreilinger.  Consequently, the marital status factor is negative.  See Olson v. Commissioner, T.C. Memo. 2009-294.

The second factor addresses economic hardship if relief from joint and several liability is not granted.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii).  The Commissioner is directed to base his determination of whether a requesting spouse will suffer economic hardship on rules similar to those provided in section 301.6343-1(b)(4), Proced. & Admin. Regs.  Id.  That regulation provides the following:

> (4) Economic hardship.--(i) General rule.--* * * This condition applies if satisfaction * * * will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses.  The determination of a reasonable amount for basic living expenses will be made by the director and will vary according to the unique circumstances of the individual taxpayer.  Unique circumstances, however, do not include the maintenance of an affluent or luxurious standard of living.
>
> (ii) Information from taxpayer.--In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--
>
> > (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;
> >
> > (B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's

production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

(C) The cost of living in the geographic area in which the taxpayer resides;

(D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

It is the taxpayer's burden to demonstrate that her expenses qualify as basic living expenses and that those expenses are reasonable. Monsour v. Commissioner, T.C. Memo. 2004-190.

Petitioner made no showing of economic hardship. Petitioner testified that she pays all of the household expenses, but she did not show that she would be unable meet her basic living expenses if she were not relieved of the 2005 joint income tax liability. Petitioner's argument was that it would be "unjust" to hold her liable because the liability from which petitioner requests relief is Mr. Dreilinger's liability. This argument is irrelevant to a determination of economic hardship. Additionally, petitioner testified that her husband, who receives his own income, is willing and able to pay the outstanding liability. On the basis of the record, we conclude that petitioner will not suffer economic hardship if relief is not

granted.  The economic hardship factor therefore weighs against granting the requested relief.  See Olson v. Commissioner, supra.

The third factor addresses the requesting spouse's knowledge or reason to know of the underpayment or item giving rise to the deficiency.[5]  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii).  In the case of an underpayment, the inquiry regards whether "the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the income tax liability." Id. sec. 4.03(2)(a)(iii)(A).  In the case of a deficiency, the inquiry regards whether "the requesting spouse did not know and had no reason to know of the item giving rise to the deficiency." Id. sec. 4.03(2)(a)(iii)(B).  In either case, the Commissioner is directed to base his determination on the following:

> the requesting spouse's level of education, any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's degree of involvement in the activity generating the income tax liability, the requesting spouse's involvement in business and household financial matters, the requesting spouse's business or financial expertise, and any lavish or unusual expenditures compared with past spending levels.  [Id. sec. 4.03(2)(a)(iii)(C).]

Petitioner does not appear to have actual knowledge of Mr. Dreilinger's retirement income.  The retirement account belonged solely to Mr. Dreilinger, and she and Mr. Dreilinger kept separate finances.  Neither party offered evidence regarding

---

[5]See supra note 4.  We need not decide whether petitioner's outstanding liability is an underpayment or an understatement because petitioner is ineligible for relief under either analysis.

lavish or unusual expenditures compared with past spending levels.

While petitioner may or may not have had actual knowledge of Mr. Dreilinger's retirement income, she had reason to know of the retirement income. Petitioner holds a master's degree and is the assistant administrator at a nursing home. Her education and occupation suggest business experience. Additionally, petitioner pays all of the household bills.

Petitioner testified that Mr. Dreilinger suffers from cognition problems and that she could not trust him to perform simple tasks. Petitioner offered general testimony regarding Mr. Dreilinger, but nothing specific, such as Mr. Dreilinger's disease or disorder and what care he receives, and she failed to offer any other evidence to support her contention. However, assuming Mr. Dreilinger's cognition problems existed, petitioner failed to explain why she did not independently monitor his sizable banking and brokerage accounts. Mr. Dreilinger received over $44,000 in unreported retirement income during 2005.

As to Mr. Dreilinger's deceitfulness, petitioner had warning signals. While Mr. Dreilinger may have had a tendency to hide petitioner's mail, petitioner failed to testify as to the actions she took, if any, to assure the accurate reporting of their tax information. According to Ms. Halloway's notes, five separate Forms 1099-R, Distributions From Pensions, Annuities, Retirement

or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., were issued disclosing Mr. Dreilinger's retirement income.[6]  Moreover, petitioner learned that Mr. Dreilinger had omitted retirement income from the 2003 return around the time the 2005 return was filed.  While petitioner testified that she could not be sure whether she learned of the 2003 omitted income before or after signing the 2005 return, we conclude that she knew or should have known of the income before signing the 2005 return because she and Mr. Dreilinger filed the return after receiving an extension of time to file.  See sec. 1.6081-4T(a), Temporary Income Tax Regs., 70 Fed. Reg. 67359 (Nov. 7, 2005), (allowing an automatic 6-month extension of time to file an individual return).  According to Ms. Halloway's notes, Mr. Dreilinger also had unreported retirement income from their 2004 tax year.  Finally, petitioner testified that Mr. Dreilinger lends money to his parents "all the time".  Mr. Dreilinger's loans to his parents could also have alerted petitioner to an undisclosed income source.  On the basis of the record, we conclude that petitioner should have known of Mr. Dreilinger's unreported retirement income.

Mr. Dreilinger received over $44,000 in unreported income during 2005.  However, petitioner testified that Mr. Dreilinger

---

[6]Ms. Halloway did not testify.  Petitioner did not object to the admission of Ms. Halloway's report or discredit her report in any way.

could not account for his own funds and she could not trust him to perform simple tasks.  Petitioner also failed to offer evidence regarding Mr. Dreilinger's other sources of reported income, if any, and whether such sources would have been sufficient to support loans to his parents.  On the basis of the record, we conclude that petitioner had reason to known that Mr. Dreilinger would not pay the outstanding tax liability. Therefore, the knowledge factor weighs against petitioner.

The fourth factor addresses the nonrequesting spouse's legal obligation to pay pursuant to a divorce decree or agreement.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv).  Petitioner and Mr. Dreilinger are still married; therefore the "legal obligation" factor weighs against granting relief to petitioner; i.e. the obligation remains a joint obligation.  See Olson v. Commissioner, T.C. Memo. 2009-294.

The fifth factor addresses whether the nonrequesting spouse significantly benefited from the unpaid tax liability.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(v).  There is no evidence in the record to indicate that petitioner did not receive any significant benefit from Mr. Dreilinger's unreported retirement income.  Petitioner bears the burden of establishing the evidentiary basis for relief.  Therefore, the significant benefit factor weighs against granting relief.

The sixth factor addresses compliance with income tax laws and whether the requesting spouse has made a good faith effort to comply with income tax laws in the tax years after the tax year in issue. See id. sec. 4.03(2)(a)(vi). Respondent concedes petitioner's compliance in filing subsequent returns, which weighs in favor of granting relief.

Additionally, Rev. Proc. 2003-61, sec. 4.03(2)(b), lists two positive factors that the Commissioner will consider in favor of granting equitable relief, if present. Those factors are: (1) Whether the nonrequesting spouse abused the requesting spouse (the abuse factor); and (2) whether the requesting spouse was in poor mental or physical health when signing the return or requesting relief (the mental or physical health factor).

As to the abuse factor, the record does not establish that Mr. Dreilinger abused petitioner. As to the mental or physical health factor, petitioner did not assert or demonstrate that she was in poor mental or physical health when requesting relief or signing the return; rather, petitioner merely claimed anguish over Mr. Dreilinger's condition. Therefore, those two factors are inapplicable.

In sum, on the basis of our examination of the entire record before us, we conclude that petitioner has failed to carry her burden of showing that she is entitled to relief under section

6015(f) with respect to the portion of the liability relating to the retirement income for the tax year 2005.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we conclude that they are without merit, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.