T.C. Memo. 2006-243

UNITED STATES TAX COURT

RAYMOND T. and PATRICIA MURPHY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3601-03.                    Filed November 9, 2006.

<u>Gerald Katz</u>, for petitioners.

<u>C. Teddy Li</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  In December 1997, Raymond Murphy sent a check to Philip Hunt for $225,000.  Murphy says the check was for interest that he owed Hunt on two living horses; the Commissioner says the check was a repayment of principal on a dead one.  If Murphy is right, the entire amount is deductible; if he isn't, none is.

## FINDINGS OF FACT

Raymond Murphy has been a veterinarian specializing in horses for forty years.  He also became a real estate developer, and a few of the deductions originally contested in this case come from that business.  But the bulk of this case, and Murphy's great pleasure, comes from breeding, raising, and trading thoroughbred horses.  Although Murphy has owned a stableful over the years, only three horses figure in this case:  Hamseh, Desert Spice, and On the Piste.  All three are broodmares, and all came to Murphy from what he described as his "wheeling and dealing" and "whipping and dipping" with Philip DeVere Hunt of Tipperary, Ireland, a fellow breeder whom Murphy has long known.

Murphy bought Hamseh and Desert Spice from Hunt in 1994.  Hamseh cost him $600,000, which he financed in part with a promissory note for $425,000 in Hunt's favor.  Interest on this note accrued at a rate of ten percent per annum on any unpaid balance, and the note required interest payments in August 1995 and August 1996, and then all remaining principal and interest by December 31, 1996.  The note stated that "all payments shall be first applied to interest and the balance to principal."

Desert Spice cost Murphy $385,000.  He financed $379,000 of the total price with a promissory note.  Like the note for Hamseh, this note also had a specific repayment schedule: (1) $40,000 of principal in May 1995; (2) interest at ten percent

in November 1995; (3) another $100,000 of principal in May 1996; (4) interest on the balance in November 1996; and (5) any remaining principal and interest by November 15, 1997.  As in the note for Hamseh, Murphy's payments on Desert Spice were first to be applied to interest before any reductions in principal.

And that leads to the third horse in this case, On the Piste.[1]  Hunt apparently sold her to Murphy in July 1997; there was no date on the bill of sale, but a copy of the fax that Hunt sent to Murphy to confirm the sale bore a July 31, 1997 stamp. Murphy agreed to pay $250,000, but the sale was subject to the condition that she be carrying a foal.  Certification by a veterinarian that On the Piste was pregnant would trigger a payment of $25,000.  Murphy would owe the remainder on or before December 31, 1998 but, unlike the deals for Hamseh and Desert Spice, the deal for On the Piste did not require Murphy to pay interest on the unpaid principal.  On August 19, 1997, Murphy paid Hunt $25,000 after On the Piste's pregnancy was confirmed. He also took out an insurance policy on her for $250,000.  The horse remained in Hunt's stables pending shipment to Maryland, but less than six weeks later both she and her unborn foal died while still in Ireland.  Murphy filed a claim with his insurer,

---

[1] Piste means ski trail--alluding to the names of her sire and dam, Shirley Heights and Snowing.  Her pedigree features two appearances by Nasrullah (the grandsire of Secretariat) and one by Native Dancer (a winner of the Preakness and Belmont), two of the most prominent breeding stallions of the last century.

and received a check for $250,000 on December 12, 1997. On December 27, he sent a $225,000 check to Hunt. The memo line on the front of the check said that payment was being made for "Hamseh and Desert Spice Interest." Of course, as the IRS noticed, this was the same amount that Murphy still owed Hunt for On the Piste.

It is here that agreement between the parties ends, and we canter into a mare's nest of conflicting claims. Murphy argues that he was in arrears on his payments of principal and interest on both Hamseh and Desert Spice. As final payment for On the Piste was not due until the end of 1998, Murphy claims that he agreed with Hunt to pay off at least some of the interest owing on the other two horses. That the interest amount worked out to $225,000, the amount of principal still owed for On the Piste, simply reflects the fact that that was the money that he had in hand as a result of the insurance settlement. He relies for proof on a written payment extension signed by Hunt that gave him an additional year (to December 31, 1999), to make final payment for On the Piste, provided that he use $225,000 of the $250,000 in insurance proceeds from the death of On the Piste to bring the interest owed on Hamseh current through the end of 1997, and the interest owed on Desert Spice current through the beginning of March 1997. Murphy claims that the agreement was based on the interest and principal calculations of his accountant, and that

Hunt concurred in them. Murphy claimed the $225,000 payment as an interest deduction on his 1997 tax return.

The Commissioner disallowed that deduction, having concluded that Murphy had actually already paid for Hamseh and Desert Spice. He believes that Murphy used the $225,000 to pay off the balance owing for On the Piste.[2] He also disallowed various other minor expenses. A notice of deficiency followed, in which the Commissioner asserted an accuracy-related penalty under section 6662 on the entire deficiency.[3]

The parties originally submitted the case for decision on stipulated facts under Rule 122, but it was then restored to the Court's general docket for trial. The Murphys are residents of Maryland, as they were when they filed their petition, and trial was held in Baltimore.

OPINION

We must decide three issues: (1) whether Murphy has successfully shifted the burden of proof onto the IRS; (2) whether Murphy's payment to Hunt was a deductible interest

---

[2] Given the paperwork that Murphy produced, this might seem to amount to an assertion that Murphy was committing fraud. This would have triggered a larger penalty, but would also have saddled the Commissioner with a heavier burden of proof.

[3] Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for the years at issue, and the Rule references are to the Tax Court Rules of Practice and Procedure.

expense; and (3) whether Murphy is liable for an accuracy-related penalty due to negligence or a substantial understatement.

1.  Burden of Proof

A taxpayer usually bears the burden of proof on each contested issue of fact.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). But section 7491(a) lets him shift that burden to the Commissioner if he shows that he kept all the records required by the Code and cooperated with the IRS, and if he introduces credible evidence about the particular issue on which he is trying to shift the burden.  Cipriano v. Commissioner, T.C. Memo. 2001-157, affd. 55 Fed. Appx. 104 (3d Cir. 2003).

In this case, we find that the Commissioner bears the burden of proof on the central issue of the interest deduction.  Murphy was able to provide copies of the essential documents, and credibly testified that his C.P.A. kept extensive records regarding his business dealings.  The Commissioner did not refute this claim.  Murphy was also able to substantiate the interest transaction through canceled checks and payment agreements.  And we believed his testimony that he had cooperated with the IRS during the audit of his return.  This is enough to shift the burden, though we do note that this usually doesn't matter very much--most cases will be decided on a preponderance of the evidence.  Shifting the burden may, however, affect the way we

view possible gaps in the evidence.

2.  <u>Deductibility of Interest</u>

Turning to the main issue in the case--Murphy's attempted $225,000 deduction for interest--we begin with the law. Section 163(a) states as a general rule that "there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." In <u>First Natl. Co. v. Commissioner</u>, 32 T.C. 798, 807 (1959), revd. and remanded on other grounds 289 F.2d 861 (6th Cir. 1961), we defined indebtedness as "an existing, unconditional, and legally enforceable obligation for the payment of money."

Recognizing this, the Commissioner argues first that the disputed check couldn't have gone to pay interest on Hamseh and Desert Spice because Murphy had already paid off those notes, meaning there was no underlying valid debt between Murphy and Hunt. The Commissioner's strongest argument is the presence of the legend "paid in full" marked on the promissory notes for both Hamseh and Desert Spice. If Murphy had paid these notes according to their original terms, they would both have been paid off by December 1997. The problem, however, is that neither party introduced documentary or expert evidence of when the notes were marked as "paid in full." Murphy himself testified that the promissory notes were marked "paid in full" only much later. At the end of 1997, he said he still had not ponied up enough money

to extinguish the debt for either Hamseh or Desert Spice. According to Murphy, he and Hunt modified their sales contracts for Hamseh and Desert Spice to use the cash-in-hand from the insurance settlement to pay much of the unpaid interest on those horses. The debt was finally extinguished--and the notes marked "paid in full"--only years later, when Murphy agreed to turn over to Hunt one foal each from Hamseh and Desert Spice. In addition to his testimony, Murphy produced a written agreement with Hunt ratifying the continuing existence of his obligation to pay the outstanding principal for On the Piste.

In judging the credibility of this story, we wondered what was in it for Hunt--if Murphy is to be believed, by the time he bought On the Piste in mid-1997, he was still in debt to Hunt on the other two horses for hundreds of thousands of dollars. If Murphy was truly delinquent in his payments to Hunt, why would Hunt continue to "whip and dip" by selling On the Piste to him? Why is there no rock-solid contemporaneous documentation regarding the many extensions, modifications, etc. of the note payments that were to have occurred?

It would also have been easy, one might think, for one party or the other to have introduced Murphy's check registers and bank statements for 1994-97 to see the extent to which the debts on Hamseh and Desert Spice had been paid. But neither party did, despite Murphy's having turned all these records over to the IRS

during audit.  And the Commissioner invoked his right to exclude the testimony of the accountant who'd prepared Murphy's tax returns on the ground that he had not been identified in Murphy's pretrial memorandum.

We are therefore forced to rely mostly on our evaluations of Murphy's truthfulness and the rather thin paper trail.  And, in the end, we do find that Murphy's testimony was credible.  Due to the length of his dealings with Hunt, including many successful trades and coownership of some horses, we find that their relationship was strong enough to explain Hunt's willingness to extend the payment schedule for Hamseh and Desert Spice.  Apart from unsuccessfully challenging Murphy's credibility, and despite having the burden of proof on this issue, the IRS provided no direct evidence that Murphy did not owe Hunt money for those two horses when he mailed Hunt the $225,000 check.  We therefore find that Murphy has shown that a valid indebtedness on Hamseh and Desert Spice still existed at the end of 1997.  See First Natl., 289 F.2d at 866 (leniency by lender in not pressing for collection on debt does not create presumption that debt is invalid).

The Commissioner next argues that, even if those notes were still outstanding, Murphy must have intended to use the money to repay the principal owed for On the Piste, because $225,000 was the exact amount that Murphy still owed Hunt for that horse.

Here again we find Murphy credible when he testified that he got together with his accountant in late 1997 to calculate the number of days' worth of interest on Hamseh and Desert Spice that $225,000 would pay off, and then secured Hunt's acquiescence in treating the payment as interest on those two horses instead of full payment of principal for On the Piste. A note that isn't paid according to its original terms is still a debt even though overdue, see id., and Hunt was free to accept immediate payment of interest for Hamseh and Desert Spice and equally free to extend the due date for Murphy to finish paying for On the Piste. See, e.g., Kluesner v. Commissioner, T.C. Memo. 1989-83 ("the parties to a contract may modify an existing contract by mutual consent" (citation omitted)). We hold that the $225,000 payment was for interest on a valid and enforceable debt between Murphy and Hunt. That's all that's required to rule in Murphy's favor on the issue of deductibility.

3. Accuracy-Related Penalty

Only the penalty issue remains. The Commissioner can impose a penalty for negligence on a taxpayer who fails to make a reasonable attempt to comply with the provisions of the Code or displays careless, reckless, or intentional disregard of the Code or regulations. Sec. 6662; sec. 1.6662-3, Income Tax Regs. In this case, the Commissioner asserted the penalty against the entire deficiency.

Most of the asserted penalty disappears with our ruling that Murphy was entitled to treat the $225,000 payment as interest. There were, however, other adjustments in the notice of deficiency. These were comparatively small and, in a burst of lawyerly horse-trading before the trial began, they were all settled with reciprocal concessions. Murphy conceded the following:

| Description | Amount |
|---|---|
| Capitalization of electrical | $4,500 |
| Legal expenses | 1,850 |
| Utilities | 3,995 |
| Telephone | 2,869 |
| Dues and subscriptions | 900 |
| Total | 14,114 |

The parties did not settle the question of whether the section 6662 penalty would apply to these items. The Court warned them that they should introduce some evidence on these items because the penalty remained in dispute. They did not do so, and now we have to decide the issue in the absence of any evidence.

We solve this problem by relying on Swain v. Commissioner, 118 T.C. 358, 364-65 (2002), where we said:

> An individual must first challenge a penalty by filing a petition alleging some error in the determination of the penalty. If the individual challenges a penalty in that manner, the challenge generally will succeed unless the Commissioner produces evidence that the penalty is appropriate.

In this case, Murphy did contest in his petition the penalty on all the items that the Commissioner disallowed.  It was therefore up to the Commissioner to come forward with at least some evidence that their imposition was justified--for example, by showing that Murphy hadn't kept adequate books and records on those items.  See, e.g., <u>Higbee v. Commissioner</u>, 116 T.C. 438, 449 (2001); <u>Biazar v. Commissioner</u>, T.C. Memo. 2004-270.

This he did not do.  Instead, he argues that Murphy's concession to the disallowance of these minor items is *ipso facto* proof of Murphy's negligence.  This argument is much too broad-- conceding that a deduction is not allowable is not the same as conceding that it was taken negligently or in intentional disregard of the rules and regulations.

The Commissioner's alternate basis for the penalty is that Murphy substantially understated his tax liability.  An understatement is deemed "substantial" if it exceeds the greater of ten percent of the tax required to be shown on the return, or $5,000.  Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.  As we reasoned in <u>Perry Funeral Home v. Commissioner</u>, T.C. Memo. 2003-340**,** the Commissioner satisfies his burden under section 7491(c) to show some evidence of understatement by pointing to a taxpayer's concession that at least some deductions were not allowable.  Whether any understatement resulting from

Murphy's concessions on these smaller items is "substantial" or
not is a computational issue, and so

<u>Decision will be entered</u>

<u>under Rule 155</u>.