T.C. Summary Opinion 2008-2


UNITED STATES TAX COURT



CLARISSA YBARRA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19127-06S.               Filed January 3, 2008.


Clarissa Ybarra, pro se.

<u>Ric D. Hulshoff</u>, for respondent.


JACOBS, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  The issue for decision is whether respondent

_____

        [1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

abused his discretion in denying petitioner innocent spouse relief under section 6015 for tax year 2004.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Tucson, Arizona, at the time she filed the petition.

On February 21, 2005, petitioner and Samuel Olivas (Mr. Olivas) filed a joint Form 1040, U.S. Individual Income Tax Return, for 2004. At the time they filed the joint return, petitioner and Mr. Olivas were married but separated, having married on December 8, 2003, separated in October of 2004, and divorced on May 24, 2005. The return was prepared by H&R Block.

The return listed petitioner's occupation as that of manager and Mr. Olivas as retired. Their reported adjusted gross income was $27,201. After subtracting itemized deductions and claiming exemptions for themselves and petitioner's three children, petitioner and Mr. Olivas reported a tax of $84, which was offset by the child tax credit.

Petitioner and Mr. Olivas reported withheld taxes of $103, claimed an earned income credit of $1,734, and claimed an additional child tax credit of $1,916, resulting in a claimed tax refund of $3,753. Pursuant to a "rapid refund" loan

arrangement,[2] H&R Block lent petitioner and Mr. Olivas an undisclosed sum of money based on the amount of the refund claimed.  The record does not reveal the extent to which petitioner and Mr. Olivas shared the loan proceeds, but both went to H&R Block to pick up the rapid refund loan check.  Respondent remitted the amount of refund  petitioner and Mr. Olivas claimed into an H&R Block account, and thus the rapid refund loan was repaid.

Before his separation from petitioner, Mr. Olivas shared the residence where petitioner lived with her three children.  By April 2, 2005, relations between petitioner and Mr. Olivas had deteriorated to the point that an officer of the Tucson Police Department was dispatched to petitioner's residence.  An order of protection was obtained by petitioner and served on Mr. Olivas.

After petitioner and Mr. Olivas filed their return, a statement from the Arizona State Retirement System was received which reflected a $1,328 retirement distribution to Mr. Olivas during 2004 as well as $266 of Federal tax withholding with respect to the distribution.  Petitioner and Mr. Olivas filed an amended return on April 14, 2005, again with the assistance of H&R Block, to reflect this information.  A payment of $143 was made with the amended return, as explained infra.

---

[2]The record does not disclose the terms of the rapid refund loan.

During 2004, there were two additional retirement distributions to Mr. Olivas that were not shown on either the original or the amended return:  $654 from the Social Security Administration, from which no Federal tax was withheld, and $1,940 from the Arizona State Retirement System, from which $388 of Federal tax was withheld.  Petitioner did not know that these distributions had been made.[3]  Hereinafter, these distributions will be referred to as the additional distributions.

Inclusion of the additional distributions in income caused an increase in the couple's 2004 adjusted gross income, a reduction in their allowable itemized deductions, a consequent increase in their income tax, and a 10-percent additional tax on early distributions from qualified retirement plans.  The increased income tax was offset by a corresponding increase in the child tax credit.  The 10-percent additional tax on early distributions from qualified retirement plans was offset by the amount withheld by the Arizona State Retirement System.  However, the inclusion of the additional retirement distributions in income caused a reduction in the amount of allowable earned income credit, and the increase in the child tax credit used to offset the income tax reduced the amount of allowable additional

_____

[3]Petitioner and Mr. Olivas did not have a joint bank account.

child tax credit.[4]  Reductions in the amounts of allowable
credits, after taking into account the tax refund that had
already been made, resulted in a 2004 tax liability of $771
which, together with interest as of August 7, 2006 (the date
respondent issued a notice of deficiency for 2004), amounted to
$842.

Neither petitioner nor Mr. Olivas petitioned this Court for
redetermination of the deficiency for 2004.

Petitioner requested innocent spouse relief under section
6015 on January 9, 2006.  Respondent issued a final notice of
determination denying petitioner's request on August 14, 2006.

### Discussion

Married couples may choose to file their Federal income tax
returns jointly.  Sec. 6013(a).  Couples filing joint returns are
jointly and severally liable for the taxes due thereon.  Sec.
6013(d)(3).  Section 6015 provides relief from liability for
filers of joint returns in some circumstances.  One such
circumstance is set forth in section 6015(b)(1).

To qualify for relief pursuant to section 6015(b)(1), the
requesting spouse must establish that:  (1) A joint return was
filed; (2) there was an understatement of tax attributable to

---

[4]The same results flowed from inclusion in income of the
retirement distribution with respect to which the amended return
was filed.  The $143 payment that accompanied the amended return
represented payment for the increase in tax due as a consequence
of the aforesaid retirement distribution.

erroneous items of the nonrequesting spouse; (3) at the time of signing the return, the spouse seeking relief did not know, and had no reason to know, of the understatement; (4) taking into account all the facts and circumstances, it is inequitable to hold the spouse seeking relief liable for the deficiency in tax attributable to the understatement; and (5) the requesting spouse seeks relief within 2 years of the first collection activity relating to the liability.

Respondent concedes that the first and last requirements of section 6015(b)(1) (i.e., that a joint return was filed and that petitioner timely requested relief) are met. Respondent acknowledges in his pretrial memorandum that he has no evidence upon which to challenge petitioner's assertion that she did not know, and had no reason to know, of Mr. Olivas's retirement income at the time she signed the return. And we are satisfied (and thus conclude) that the aforesaid third requirement of section 6015(b)(1) is met.

Respondent contends that petitioner has not met the second requirement for relief under section 6015(b)(1); i.e., that there be an understatement of tax attributable to erroneous items of Mr. Olivas. See sec. 6015(b)(1)(B). Respondent points to the fact that the understatement[5] on the return resulted from

_____

[5]Sec. 1.6015-2(b), Income Tax Regs., provides that the term "understatement" has the meaning given to that term by sec.
(continued...)

petitioner and Mr. Olivas's claiming the earned income credit and an additional child tax credit in excess of the allowable amounts. These credits are attributable to both spouses, posits respondent, rather than only to Mr. Olivas. We do not agree.

An "item" for purposes of section 6015, and more specifically section 6015(b)(1)(B), is "that which is required to be separately listed on an individual income tax return or any required attachments. Items include, but are not limited to, gross income, deductions, credits, and basis." Sec. 1.6015-1(h)(3), Income Tax Regs. An "erroneous item" is "any item resulting in an understatement or deficiency in tax to the extent that such item is omitted from, or improperly reported * * * on an individual income tax return." Sec. 1.6015-1(h)(4), Income Tax Regs.

The retirement distributions Mr. Olivas received constitute gross income, which is required to be separately listed on an individual tax return. Those distributions were "erroneous

_____

[5](...continued)
6662(d)(2)(A) and the regulations thereunder; i.e., the excess of the amount of tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of sec. 6211(b)(2)). See sec. 6662(d)(2)(A). Neither the amount of tax required to be shown on the return, see secs. 1.6662-4(b)(3), 1.6664-2(b), Income Tax Regs., nor the amount of tax imposed which is shown on the return, see secs. 1.6662-4(b)(4), 1.6664-2(c), Income Tax Regs., takes into account credits for tax withheld under sec. 31 (with exceptions not present here).

items" within the meaning of section 6015(b)(1)(B), and the understatement in tax flowed from those erroneous items.

Because of these erroneous items, adjusted gross income on the 2004 joint return was understated, with the consequent overstatement of allowable itemized deductions. The 10-percent additional tax on early distributions from qualified retirement plans imposed by section 72(t)(1) was omitted from the return, and the additional child tax credit and the earned income credit were overstated.[6] But for the erroneous items attributable to Mr. Olivas, none of these consequences would have followed. The 2004 joint return as filed would have been accurate, and no understatement of tax would have resulted. Therefore, we find that petitioner has met the second requirement of section 6015(b)(1).

Additionally, respondent contends that petitioner has not met the fourth requirement for relief under section 6015(b)(1); i.e., that taking into account all the facts and circumstances, it would be inequitable to hold the spouse seeking relief liable for the deficiency in tax attributable to the understatement. See sec. 6015(b)(1)(D). We do not agree with this contention.

_____

[6]Even if we view the credits that were claimed in excess of the allowable amounts as erroneous items, they are attributable to Mr. Olivas because it was his unreported income that made the amount of claimed credit erroneous. The misstatements of allowable credits are the consequence, rather than the cause, of the omission of the distributions to Mr. Olivas from the couple's gross income.

Whether it would be inequitable to hold a spouse liable for a tax deficiency is determined by taking into account all the facts and circumstances.  <u>Id.</u>[7]  The two most often cited factors to be considered are:  (1) Whether there has been a significant benefit to the spouse claiming relief, and (2) whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse.  <u>Alt v. Commissioner</u>, 119 T.C. 306, 314 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  We also consider factors used in determining "inequity" in the context of section 6015(f).[8]  Where a refund was received, the determinative fact is who benefited from it.  <u>Juell v. Commissioner</u>, T.C. Memo. 2007-219.

The record does not reveal how petitioner and Mr. Olivas shared the loan proceeds from H&R Block (the amount of which was based on the expected tax refund).  Even if a portion of the rapid refund loan was allocated to petitioner, we are satisfied

---

[7]"The requirement in section 6015(b)(1)(D) * * * is virtually identical to the same requirement of former section 6013(e)(1)(D); therefore cases interpreting former section 6013(e) remain instructive to our analysis."  <u>Doyel v. Commissioner</u>, T.C. Memo. 2004-35.

[8]Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. 296, 298 lists nonexclusive factors the Commissioner considers in determining whether it is inequitable to hold the electing spouse liable for all or part of a deficiency under sec. 6015(f).

that petitioner did not significantly benefit from the tax refund.

Petitioner's monthly income in 2004 consisted of $1,600 of her own wages and $250 of Government assistance. Petitioner did not receive any child support, and Mr. Olivas did not contribute to the support of the household. Petitioner paid all bills for the household, which consisted of herself, her three children, and Mr. Olivas, from her separate bank account. There is no evidence that petitioner acquired assets or incurred unusual or extravagant expenses. Petitioner did not have any health or life insurance. We are convinced that any portion of the rapid refund loan allocated to petitioner was used to pay for essential living expenses and the cost of supporting her household at a very modest level.[9] Indeed, respondent conceded in his pretrial memorandum that "respondent does not believe the small amount of money involved provided any significant benefit beyond normal support."

Petitioner learned of the retirement distributions only when she was notified by third parties (the Arizona State Retirement

---

[9]Cf. <u>Alt v. Commissioner</u>, 119 T.C. 306, 314 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004), in which the spouse requesting innocent spouse relief and her husband purchased a home for each of their four children, purchased a 600-acre riverfront property upon which a Georgian mansion was being built, purchased a business for their son, fully paid for their children to attend undergraduate and graduate schools, and indulged the requesting spouse's interest in antiques.

System and the Social Security Administration) that the distributions had been made.  It is evident that Mr. Olivas concealed the distributions from petitioner, which was not difficult for him to do, given their financial arrangements (no joint bank accounts and household bills paid only from petitioner's account).  It was this concealment that led to the failure to report the correct tax liability.

We have considered other factors that are relevant to whether it would be inequitable to hold petitioner liable. Petitioner's level of earnings and the fact that petitioner receives public assistance lead to the conclusion that petitioner already experiences economic hardship, in that she is unable to pay her basic reasonable living expenses.  See sec. 301.6343-1(b)(4), Proced. & Admin. Regs.  This hardship will only be compounded if relief from liability is not granted.  To conclude, respondent abused his discretion in denying petitioner innocent spouse relief under section 6015 for tax year 2004.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.