T.C. Memo. 2010-257

UNITED STATES TAX COURT

GAIL PRESCOTT DRAYER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17915-08.                    Filed November 23, 2010.

Barbara N. Doherty and Eric L. Lunsford,[1] for petitioner.

John M. Wall, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge:  This case arises from a request for relief
from joint and several liability under section 6015(f)[2] for the

[1]Eric L. Lunsford filed a motion to withdraw as petitioners'
counsel, which we granted.

[2]All section references are to the Internal Revenue Code,
and all Rule references are to the Tax Court Rules of Practice
and Procedure, unless otherwise indicated.

years 1995 through 2003 (the years at issue). Respondent denied petitioner's request for relief, and petitioner timely filed a stand-alone petition.[3] The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f). We hold that she is entitled to relief.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and the accompanying exhibits are incorporated by this reference. Petitioner resided in Santa Rosa, California at the time she filed the petition.

Petitioner was in her mid-30s when she married Charles Drayer (Mr. Drayer) in 1983. The Drayers divorced in 2004 after 21 years of marriage. Petitioner seeks innocent spouse relief from tax liabilities arising from Mr. Drayer's sole proprietorship during the years at issue.

Mr. Drayer began operating a sign-making business called Signs of All Kinds before meeting petitioner. He still owned and operated the business as a sole proprietorship at the time of trial. When petitioner met Mr. Drayer, she worked as a newspaper typesetter and layout artist. After the Drayers married, petitioner left her job and became a homemaker.

---

[3]This Court has jurisdiction to determine whether sec. 6015(f) relief is warranted after a request for relief has been denied by the Commissioner. See sec. 6015(e)(1).

Petitioner's primary focus was to raise the couple's children, a son born in 1987 and a daughter born in 1988, and to care for their household. During available time, however, petitioner assisted Mr. Drayer with his business. Her role was limited, and she performed relatively minor or administrative tasks such as assembling signs, doing secretarial work, obtaining permits, depositing checks into the business checking account, checking account balances from time to time at Mr. Drayer's direction and gathering financial information to give to the accountant. Petitioner did not design signs, secure business contracts, make business decisions, make sales or receive any compensation for her work. Indeed, Mr. Drayer testified that petitioner made no business decisions and probably did not know how much his business made.

Signs of All Kinds was the couple's sole source of income from 1987 through 2002. The income from Signs of All Kinds was modest, and they struggled to pay expenses beyond family necessities. Mr. Drayer asked petitioner to get a job or seek training beyond her high school education when their children became older and were better able to care for themselves. Petitioner did not, however, have another paying job until she got a position as a care giver in 2003.

The Drayers filed joint Federal income tax returns for the years at issue. Petitioner thought she was legally required to

sign their tax returns because they were married.  Petitioner and Mr. Drayer both knew when signing their tax returns for the years at issue that their financial situation was tight and that they might not be able to pay their tax liabilities.

Times were tough for the Drayers, and their marriage became increasingly rocky.  Mr. Drayer would often get very angry and had frequent outbursts, particularly in the context of discussions about finances and taxes.  Petitioner worried about unpaid tax liabilities, but Mr. Drayer would furiously insist that he would handle the problem and would submit another offer-in-compromise to the Internal Revenue Service.  Petitioner provided specific examples of angry outbursts, including a time when Mr. Drayer threatened to hit her and broke specific items. He also, after one such incident, told petitioner that he had intended to commit suicide.  Mr. Drayer called petitioner derogatory names and publicly humiliated her.  He also regularly drank a lot of alcohol and often smoked marijuana.

After yet another fight, Mr. Drayer left petitioner and the couple eventually divorced.  Petitioner was diagnosed with depression after their divorce.  Petitioner retained custody of their two children in the divorce.  Mr. Drayer was required to pay child support and spousal support, although spousal support payments were sometimes not made as directed.  The judgment for

dissolution of marriage did not, however, determine who would pay the couple's outstanding tax liabilities.

Petitioner's financial situation has been tight since her divorce. From 2003 through 2009 petitioner worked part time as an in-home care giver. She earned an annual average of $5,840.20 from 2004 through 2008.[4] She was diagnosed with depression and was eligible to receive disability insurance benefits for a year beginning in August 2009. The disability assistance was due to expire in August 2010, at which time petitioner was expected to be able to perform her customary work. Petitioner's monthly income for 2007 was $1,366, which she spent on basic living expenses.[5] Petitioner's monthly income in 2009 totaled $1,793.[6] Petitioner was unemployed at the time of trial.

Petitioner retained the services of AARP Tax-Aide to prepare her income tax returns, which were timely filed for 2004 through 2009. Despite her very modest income, petitioner timely filed and paid all liabilities shown on her returns for those years. Petitioner later discovered that $4,880 and $10,357.20 of alimony

---

[4]Petitioner earned $7,581 in 2004, $5,016 in 2005, $7,101 in 2005, $4,415 in 2007 and $5,088 in 2008.

[5]Her expenses for 2007 were $1,366 per month, consisting of $800 for rent or mortgage, $100 for food, $70 for utilities, $50 for telephone, $180 for auto payments, $116 for auto insurance and $50 for auto repairs.

[6]Petitioner's monthly income in 2009 consisted of $705 from Social Security, $500 in spousal support and $588 from disability insurance.

had been omitted from her 2004 and 2005 tax returns, respectively.  She also later learned that $366 of unemployment compensation had been omitted from her 2006 return.  Petitioner indicated surprise and embarrassment about the omissions at trial, and was not aware of any other omissions.  Respondent asserts that petitioner failed to include $1,800 of alimony in income for 2007 as well.

Petitioner requested innocent spouse relief in 2007 for the Drayers' unpaid tax liability of over $230,000 for multiple years.  Petitioner checked a box on her initial request for innocent spouse relief, claiming that she was a victim of domestic abuse and feared that filing a claim for innocent spouse relief would result in retaliation.  She neglected, however, to complete the question regarding abuse on her related questionnaire because she did not see the question when she and her friend from church completed the questionnaire.  As part of respondent's review, Mr. Drayer completed a Form 12508, Questionnaire for Non-Requesting Spouse, where he stated under penalties of perjury that petitioner was not a help with the business.  In fact, he stated that she was a simpleton.  He confirmed there were no major assets transferred in the divorce except that petitioner received a car.  Respondent made a preliminary determination to deny petitioner's request for innocent spouse relief, determining that she failed to prove she

had reason to believe the taxes would be paid when she signed the returns.

Petitioner appealed the determination. Respondent's Appeals Office agreed that petitioner had met all seven threshold requirements for relief and would suffer economic hardship if obligated to pay the tax liabilities. Respondent's Appeals Office also determined that petitioner was compliant with tax laws as of the time of determination and that the income tax liabilities in question are attributable to Mr. Drayer. Nevertheless, respondent's Appeals Office disallowed the claim for relief in 2008. Respondent denied her relief on the grounds that petitioner knew or had reason to know that the taxes reported on each return would not be paid.

OPINION

We must decide whether petitioner is entitled to relief from tax liabilities related to her ex-husband's sole proprietorship during the second half of their 21-year marriage. The liabilities consist of amounts shown as due on their returns and left unpaid. Petitioner argues that she qualifies for relief and it is inequitable to hold her liable for underpayments attributable to income from Mr. Drayer's business. Respondent's Appeals Office denied petitioner's claim because she had knowledge that the tax liability might not be paid. Respondent denied her relief even though respondent's Appeals Office

determined petitioner had met all seven threshold requirements for relief and that other factors, including economic hardship, subsequent compliance with tax laws and attribution of the liability to Mr. Drayer, all weighed in petitioner's favor. Respondent now seeks to broaden the scope of issues to include those beyond petitioner's knowledge, and to refute determinations made by his Appeals Office.

Only section 6015(f) applies as this case involves underpayment of taxes shown on joint returns for the relevant years.[7]  The Commissioner has the discretion to relieve a spouse or former spouse of joint liability if, taking into account all the facts and circumstances, it is inequitable to hold that spouse liable for any deficiency or unpaid tax.  Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs.

We begin with the standard of review and the burden of proof.  Respondent urges us to review the case for abuse of discretion.  To do so, however, would be to reject our previous holding that the standard of review is de novo.  Porter v. Commissioner, 132 T.C. 203 (2009).  A trial de novo requires

_____

[7]Married taxpayers who elect to file a joint return are jointly and severally liable for the entire tax due.  See sec. 6013(d)(3).  A spouse or former spouse may petition the Commissioner for relief from joint and several liability in certain circumstances.  See sec. 6015(a).  Sec. 6015(b) and (c) does not apply in cases involving underpayment of tax, as here. Equitable relief may, however, be available under sec. 6015(f). Sec. 1.6015-4, Income Tax Regs.; Rev. Proc. 2003-61, sec. 2.04, 2003-2 C.B. 296, 297.

independent judicial determination of the issues in the case. See, e.g., Morris v. Rumsfeld, 420 F.3d 287, 292, 294 (3d Cir. 2005); Timmons v. White, 314 F.3d 1229, 1233-1234 (10th Cir. 2003). The spouse requesting relief generally bears the burden of proof. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f). See Rev. Proc. 2003-61, 2003-2 C.B. 296. We now analyze the facts under these procedures to determine whether petitioner qualifies for equitable relief.

## I. Threshold Conditions for Section 6015(f) Relief

A requesting spouse must satisfy seven threshold conditions before the Commissioner will consider a request for relief. Id. sec. 4.01, 2003-2 C.B. at 297. Respondent's Appeals Office concluded that petitioner had satisfied all seven. In brief, however, respondent argued that petitioner has not shown that the Drayers' underpayments are attributable to her ex-husband.[8] We disagree.

Mr. Drayer started his business, Signs of All Kinds, as a sole proprietorship before he met petitioner. He still owned and

---

[8]Respondent had also asserted that petitioner failed to apply for relief within two years after the date of respondent's first collection activity. See Rev. Proc. 2003-61, sec. 4.01(3), 2003-2 C.B. at 297. Respondent has conceded this point.

operated this business as a sole proprietorship long after their divorce. These facts, although not dispositive, are important. See Franc v. Commissioner, T.C. Memo. 2010-79.

Petitioner credibly testified that her primary focus was to raise her children and care for the Drayers' household. She may have left her job in part to help Mr. Drayer with his business. Her involvement in the business was minimal, however, and she did not play an active role. She did not design signs, make business decisions, make sales or secure contracts. She helped with the business only during available time outside of caring for the Drayers' two children and their home. During this limited time, petitioner assisted Mr. Drayer with his business by assembling signs, performing secretarial work, obtaining permits, depositing checks into the business checking account, checking account balances from time to time at Mr. Drayer's direction and gathering financial information to give to the accountant. Mr. Drayer asked petitioner to get a job or seek job training when their children became older and were better able to care for themselves. As such, petitioner did not actively and substantially participate in Mr. Drayer's work at Signs of All Kinds. Cf. Ishizaki v. Commissioner, T.C. Memo. 2001-318.

The Drayers' work was not collaborative and mutual, and petitioner was never identified as having an ownership interest in Signs of All Kinds. Cf. Olson v. Commissioner, T.C. Memo.

2009-294. Instead, Mr. Drayer declared on his questionnaire for non-requesting spouse, under penalties of perjury, that petitioner was a simpleton and was not a help with the business.[9] Mr. Drayer also confirmed at trial that petitioner made no business decisions and probably did not know how much the business made.

We find that petitioner met her burden of proving that the income for all the years at issue is attributable to Mr. Drayer and his sole proprietorship. Petitioner has satisfied the seven threshold conditions. We now consider whether relief will be granted.

II. Safe Harbor for Section 6015(f) Relief

Equitable relief will ordinarily be granted if the requesting spouse fulfills three safe harbor conditions. See Gonce v. Commissioner, T.C. Memo. 2007-328; Billings v. Commissioner, T.C. Memo. 2007-234; Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298. The parties agree that petitioner does not qualify for relief under the safe harbor because she knew when she signed the relevant returns that Mr. Drayer would not pay the liabilities. See Rev. Proc. 2003-61, sec. 4.02(1)(b), 2003-2 C.B. at 298.

_____

[9]Mr. Drayer testified at trial that the answers on his questionnaire were intended to keep peace in the family and allow petitioner to start fresh without the burden of prior tax liabilities. He had, however, changed his mind by the time of trial.

III. Balancing Test

When a requesting spouse fails to satisfy the safe harbor conditions, the Commissioner may determine through a balancing test whether equitable relief is appropriate. The Commissioner has listed factors to be weighed by the Commissioner in determining relief. See id. sec. 4.03, 2003-2 C.B. at 298-299. The factors include (a) whether the requesting spouse (1) is separated or divorced from the nonrequesting spouse, (2) would suffer economic hardship if relief were denied, (3) had knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability, (4) made a good faith effort to comply with income tax laws in years after the years at issue, (5) received significant economic benefit from the items giving rise to the liability, (6) was abused by the nonrequesting spouse and (7) was in poor health when signing the return or requesting relief and (b) whether the nonrequesting spouse had a legal obligation to pay the outstanding liability. Id. sec. 4.03(2), 2003-2 C.B. at 298-299. The list is nonexhaustive and no single factor is determinative. Id. sec. 4.03(2), 2003-2 C.B. at 298. We address each of the factors in turn.

A.  Marital Status

The first factor relates to the marital status at the time of the request for innocent spouse relief. Petitioner and Mr. Drayer divorced in 2004. This factor weighs in favor of relief.

B.   <u>Economic Hardship If Relief Were Denied</u>

A second factor focuses on whether the requesting spouse would suffer economic hardship if relief were denied. Respondent's Appeals Office found that petitioner most likely would suffer economic hardship if relief were denied. Respondent now argues, however, that petitioner has failed to establish economic hardship because she failed to provide documentation of her current expenses.

A requesting spouse suffers economic hardship if paying tax liabilities would prevent the taxpayer from paying reasonable basic living expenses. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; Rev. Proc. 2003-61, sec. 4.02(1)(c), 4.03(2)(a)(ii), 2003-2 C.B. at 298. The Court considers, among other things, in determining economic hardship (1) the taxpayer's age and earning potential, (2) an amount reasonably necessary for food, clothing, housing, medical expenses and transportation, (3) the amount of assets available to pay the taxpayer's expenses, (4) the cost of living in the geographical area in which the taxpayer lives and (5) any other factor bearing on economic hardship. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

We may accept petitioner's testimony if we find it credible. See, e.g., <u>Washington v. Commissioner</u>, 120 T.C. 137, 150 (2003). Petitioner testified that she was on disability for depression at the time of trial, and that her financial situation since her

divorce has been precarious. Indeed, petitioner's monthly income at the time of trial totaled $1,793. The disability insurance, which paid $588 per month, was due to expire in August 2010. At that time, petitioner was expected to be able to perform her customary work.

Petitioner's customary work, however, has paid less than disability insurance benefits. Petitioner earned an average of $5,840.20 annually from 2004 through 2008, averaging $100 per month less than the amount she received under disability insurance. Petitioner also testified that she was 62 years old at the time of trial and that she has only a high school education. Petitioner worked as a newspaper typesetter and layout artist but has not done this work for more than 20 years.

Petitioner appears to have little or no savings or other assets from which to pay extraordinary expenses. Mr. Drayer confirmed that she received only a car from the divorce.

Petitioner listed $1,366 as income and the same amount as expenses on the questionnaire for requesting spouse, which she completed in 2007. Her monthly expense list identified very small amounts for rent, food, utilities, telephone and auto payments, insurance and repairs.[10] She listed no medical or

---

[10]Petitioner's income is well below the amount treated as appropriate to cover her allowable expenses in her county of residence under respondent's Collection Financial Standards. See Collection Financial Standards, http://www.irs.gov/individuals/

(continued...)

insurance expenses and no amount for clothing.  Respondent correctly notes that petitioner has not provided more current information regarding her expenses.  Nevertheless, given petitioner's age, education, low earnings, expired disability benefits, history of depression and very modest list of 2007 expenses, we find that payment of such significant outstanding tax liabilities would cause petitioner to suffer economic hardship if her request for relief were denied.  This factor weighs in favor of relief.

C.  Knowledge or Reason To Know That the Nonrequesting Spouse Would Not Pay the Income Tax Liability

A third factor is whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the tax liability.  The parties agree that petitioner knew at the

---

[10](...continued)
article/0,,id=96543,00.html (last visited Sept. 21, 2010). Respondent uses the Collection Financial Standards to help determine a taxpayer's ability to pay a delinquent tax liability. For example, $526 per month would be a maximum appropriate allocation for food, clothing and other related items.  See National Standards:  Food, Clothing and Other Items, http://www. irs.gov/businesses/small/article/0,,id=104627,00.html (last visited Sept. 21, 2010).  This amount is $426 more than the $100 that petitioner allocated for this purpose in 2007.  The Collection Financial Standards also list $1,772 as an appropriate maximum monthly allowance for rent and utilities in Sonoma County.  See California - Local Standards:  Housing and Utilities, http://www.irs.gov/businesses/small/article/0,,id=1047 01,00.html (last visited Sept. 21, 2010).  This amount is $902 more than the $800 petitioner allocated for this purpose in 2007. These standards are merely guidelines for an appropriate maximum amount, but they provide some objective guidance on a reasonable standard of living in petitioner's region.

time she signed the relevant returns that Mr. Drayer was unlikely to pay the joint tax liabilities. This factor weighs against relief.

   D.   Subsequent Compliance With Income Tax Laws

A fourth consideration is whether the requesting spouse made a good faith effort to comply with income tax laws in subsequent years. Respondent's Appeals Office had determined that petitioner was compliant with tax laws as of 2008 and that this factor weighed in favor of relief. Respondent now disputes this determination.

Petitioner sought help from AARP Tax-Aide for income tax returns from 2004 to 2009. She timely filed returns for those years and timely paid the tax liabilities shown. She subsequently learned that there were omissions of alimony from her 2004 and 2005 returns and an omission of unemployment compensation from her 2006 return.[11] When asked about the omissions, petitioner's response at trial credibly indicated surprise and embarrassment about the omissions. Petitioner did not make excuses for her failure and credibly stated that she was not aware of any other omissions. This factor is neutral.

_____

[11]Respondent asserts in his posttrial brief that petitioner failed to include $1,800 of alimony from income in 2007 as well. We do not consider amounts raised for the first time in briefs. Petitioner did not have the opportunity to dispute this factual allegation at trial. See Ferrarese v. Commissioner, T.C. Memo. 2002-249.

E.    Significant Economic Benefit

A fifth factor is whether the requesting party received a significant economic benefit from the items giving rise to the liability.  The parties stipulated that the Drayers did not receive a significant benefit from their failure to pay their tax liabilities.  Respondent makes the outlandish assertion in his posttrial brief that petitioner's failure to secure adequate additional income for the family indicates that she received a significant benefit.  We will not allow this posttrial contradiction of a conclusive admission.  See Rule 91(e).  This factor weighs in favor of relief.

F.    Abuse

A sixth factor is abuse of the requesting spouse.  Abuse by the nonrequesting spouse favors relief, and a history of such abuse may mitigate a requesting spouse's knowledge that a tax liability would not be paid.  Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299.  Abuse need not be physical.  The Court has found that mental, emotional and verbal abuse may incapacitate a requesting spouse in the same way as physical abuse.  Nihiser v. Commissioner, T.C. Memo. 2008-135.  Claims of abuse require substantiation or specificity in allegations.  See id.; Knorr v. Commissioner, T.C. Memo. 2004-212; Collier v. Commissioner, T.C. Memo. 2002-144.

The Court has noted that this area of tax law is not well developed and requires a careful case-by-case analysis. Nihiser v. Commissioner, supra. Some objective indications of abuse that the Court has considered include (1) isolating the victim, (2) encouraging exhaustion of the victim, (3) obsessive or possessive behavior, (4) threats to commit suicide, to murder the requesting spouse or to kill family or friends, (5) using degrading language including humiliation, denial of victim's talents and abilities and name-calling, (6) abusing drugs or alcohol, or administering such substances to the victim, (7) undermining the victim's ability to reason independently or (8) occasional positive behavior, suggesting that the abuse might end. Id.

With this background, we begin with a review of the administrative record and then turn to the testimony presented at trial. Petitioner claimed on her initial request for innocent spouse relief (Form 8857) that she was a victim of domestic abuse and feared requesting innocent spouse relief would result in retaliation. Petitioner credibly testified that she did not describe the abuse on her questionnaire (Form 12510) because she did not see the question, which was at the bottom of the form, when she and her friend from church completed the questionnaire.

We now turn to the conflicting trial testimony regarding abuse. It is our duty as the Court to listen to testimony, observe witnesses, weigh the evidence and distill the truth.

Diaz v. Commissioner, 58 T.C. 560, 564 (1972); Kropp v. Commissioner, T.C. Memo. 2000-148. We are not required to accept testimony if it is improbable, unreasonable, or questionable. MacGuire v. Commissioner, 450 F.2d 1239, 1244-1245 (5th Cir. 1971), affg. T.C. Memo. 1970-89. We find that petitioner's testimony was credible in material respects. By contrast, we find that Mr. Drayer's and his supporting witness' testimony was not credible in certain aspects, including with respect to abuse.

Petitioner credibly testified that Mr. Drayer would often get very angry, particularly in the context of discussions about finances and taxes. Petitioner provided specific examples of angry outbursts, including a time when Mr. Drayer physically threatened to hit her and specific instances of broken items. Mr. Drayer told petitioner that he had intended to commit suicide after one particularly terrible fight. Petitioner testified that Mr. Drayer regularly called her specified derogatory names and publicly humiliated her. She also testified that he regularly drank to excess and smoked marijuana. Significant aspects of her testimony were confirmed by Mr. Drayer and his sister. We find that petitioner has shown that the abuse factor weighs in favor of relief.

G.    Poor Health When Signing the Return or Requesting
      Relief

A seventh consideration is whether the requesting spouse was in poor health when signing the return or requesting relief. Petitioner endured increasing amounts of abuse over the course of a 21-year marriage.  She testified at trial that she was depressed after her divorce in 2004, when she was caring for the Drayers' two children and on her own for the first time. Petitioner's depression was subsequently diagnosed, and she received disability insurance benefits for depression from August 2009 through 2010.  This factor weighs in favor of relief.

H.    Nonrequesting Spouse's Legal Obligation To Pay the
      Outstanding Liability

An eighth factor is whether the nonrequesting spouse had a legal obligation to pay the outstanding liability.  The Drayers' divorce judgment did not assign responsibility for outstanding tax liabilities.  This factor is neutral.

IV. Conclusion

In summary, five factors weigh in favor of relief, one factor weighs against relief and two factors are neutral.  After weighing the testimony and evidence in this fact-intensive and nuanced case, we conclude that it is inequitable to hold petitioner liable for the tax liabilities attributable to her ex-husband and his sole proprietorship.  Accordingly, we relieve petitioner from joint tax liability for the years in question.

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.