T.C. Summary Opinion 2011-77


UNITED STATES TAX COURT


LAURA E. MERCADO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10578-10S.              Filed June 29, 2011.


Laura E. Mercado, pro se.

<u>James C. Hughes</u>, for respondent.


GERBER, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as currently in effect, and all Rule references are to the Tax Court Rules of Practice and Procedure.

this opinion shall not be treated as precedent for any other case.

This proceeding was commenced under section 6015(e) for review of respondent's determination that petitioner is not entitled to relief from joint and several liability with respect to underpayments of Federal income tax reported on joint Federal income tax returns filed for 1997 and 2000.[2]

## Background

Petitioner resided in California at the time her petition was filed. She married David Schoenbrun (Mr. Schoenbrun) on August 25, 1991, and they were divorced on May 4, 2004. For the years 1991 through 1996 petitioner and Mr. Schoenbrun filed separate Federal income tax returns. During 1997, however, petitioner stopped working, had no income, and was attending graduate school. She paid her tuition by means of student loans and financial assistance but relied on Mr. Schoenbrun for household living expenses, including food, rent, utilities, etc. During 1998 petitioner received a master's degree in social welfare.

Mr. Schoenbrun's income tax returns were prepared by a professional tax preparer. Regarding the 1997 income tax return, the tax preparer advised Mr. Schoenbrun to request that

---

[2]Petitioner agrees that she is not entitled to relief for the 2000 tax year and petitions solely for review of the 1997 tax year.

petitioner file a joint income tax return with Mr. Schoenbrun in order to decrease his tax liability. He asked petitioner to file jointly for 1997, and she was reluctant because she had no source of income and was a student at the time. Out of caution, petitioner had filed separate returns before 1997 even during years that she had income because of her wish not to be liable for Mr. Schoenbrun's obligations. Mr. Schoenbrun assured petitioner that he would pay the tax liability on the 1997 income tax return.

The 1997 joint Federal income tax return (1997 joint return) reflected a $7,181 income tax liability and wage withholding of $3,945. Petitioner was aware that there was an unpaid balance on the 1997 joint return. Petitioner ultimately agreed to execute the 1997 joint return with Mr. Schoenbrun on the basis of his representation that he would pay the unpaid tax balance. At the time of signing the 1997 joint return petitioner was aware that Mr. Schoenbrun had a history of financial problems, although she understood that he was paying the household expenses and his income tax liabilities, albeit untimely. Mr. Schoenbrun knew he could not pay the liability, and unbeknownst to petitioner, he lied to her at the time she signed the 1997 joint return. Additionally, and at the time petitioner signed the 1997 joint return, Mr. Schoenbrun did not disclose to her that he had unpaid

tax liabilities for his individual 1993, 1994, 1995, and 1996 Federal income tax returns.

Respondent assessed the unpaid 1997 tax liability, but petitioner did not see any of the notifications of the assessment or collection because Mr. Schoenbrun kept that information from her. For the taxable years 1998, 1999, and 2001 petitioner did not execute a joint income tax return with Mr. Schoenbrun. For the 2000 and 2002 tax years, petitioner did execute joint income tax returns with Mr. Schoenbrun. For 1998 and 1999 petitioner attempted to file Federal income tax returns with single filing status. Because she was married to Mr. Schoenbrun during those years, petitioner was technically not entitled to single filing status.[3]

Petitioner timely filed her 2007 Federal income tax return seeking a refund, and on April 15, 2008, respondent credited $9,211.69 and $357.86 of that refund to outstanding 1997 and 2000 joint tax liabilities, respectively. On April 28, 2008, respondent notified petitioner of the offsets, and on May 12, 2009 (within 2 years from the notification), petitioner filed a Form 8857, Request for Innocent Spouse Relief. The facts petitioner relied upon in her request for relief are, in all

---

[3]The distinction between filing as an "unmarried individual" rather than "separately" is that for purposes of filing status, a married person must file either jointly or married filing separately. Petitioner incorrectly attempted to file as an unmarried individual.

pertinent respects, the same as those in the record.  After considering petitioner's request, respondent notified her that her claim for relief was denied.  Subsequently, petitioner filed a petition seeking this Court's review of respondent's determination.

## Discussion

Petitioner seeks review of respondent's denial of relief from joint liability for 1997.  The matter arose when respondent offset part of petitioner's 2007 tax refund against the unpaid 1997 joint tax liability which was solely attributable to petitioner's Mr. Schoenbrun's income.  Respondent agrees that petitioner meets the threshold test for consideration of section 6015(f) relief.  However, respondent contends that petitioner is not entitled to relief because she failed to show that she met two principal criteria for relief.[4]  Those criteria involve whether petitioner knew or had reason to know that Mr. Schoenbrun would not pay the tax liability and whether she meets the financial hardship test.

---

[4]Respondent also argued that petitioner had not been in compliance with her tax filing obligations because she attempted to file income tax returns as an unmarried individual during 1998 and 1999 when she was technically not entitled to do so because she was married at the end of each year.  We find respondent's argument to be superficial and not worthy of consideration.  Even if we considered that aspect, petitioner's action would not rise to the level of being detrimental to her request for relief.  It should also be noted that respondent conceded that all other criteria used to determine whether petitioner is entitled to relief are favorable to her.

A married taxpayer who elects to file a joint Federal income tax return is generally jointly and severally liable for the entire tax due for that year. Sec. 6013(a), (d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). Under section 6015, however, a spouse who filed a joint income tax return may seek relief from joint and several liability. Relief may be sought pursuant to different circumstances provided for in section 6015(a), (b), and (c). If a taxpayer does not qualify for relief under either section 6015(b) or (c), equitable relief may be sought under section 6015(f). The Secretary has discretion to grant equitable relief to a spouse who filed a joint income tax return for which a reported liability remains unpaid or to one who has a deficiency (or any portion of either). Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs.

Petitioner does not qualify for relief under sec. 6015(b) or (c) because the tax liability involved was an underpayment. Petitioner bears the burden of showing that she is entitled to section 6015 (innocent spouse) relief. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). The scope and standard of this Court's review in cases involving requests for equitable relief from joint and several income tax liability are de novo. Porter v. Commissioner, 132 T.C. 203 (2009).

The procedures under which the Commissioner determines whether a spouse qualifies for relief are set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296. Under those procedures a requesting spouse must meet seven threshold requirements to be considered for equitable relief. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297. Respondent concedes that petitioner meets all seven of the threshold requirements.

If a requesting spouse satisfies the threshold requirements, the Commissioner then looks to Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, for the criteria or guidelines of circumstances in which relief will ordinarily be granted under section 6015(f) with respect to an underpayment of a properly reported liability. The principal criteria considered are whether a requesting spouse is no longer married to or legally separated from the nonrequesting spouse on the date of the request for relief; had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability; and will suffer economic hardship. Id. Even though a requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the Commissioner may still grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298.

The two principal criteria in dispute are whether petitioner knew or had reason to know that Mr. Schoenbrun would not pay their 1997 tax liability and whether she will suffer financial

hardship if relief is not granted. As to whether petitioner knew or had reason to know that Mr. Schoenbrun would not pay the income tax liability, the relevant knowledge is knowing when the income tax return was signed that the tax would not be paid. Rev. Proc. 2003-61, sec. 4.02(1)(b). The following factors are used in determining whether the requesting spouse had reason to know: (1) The requesting spouse's level of education, (2) any deceit or evasiveness of the nonrequesting spouse, (3) the requesting spouse's degree of involvement in the activity generating the income tax liability, (4) the requesting spouse's involvement in business and household financial matters, (5) the requesting spouse's business or financial expertise, and, (6) any lavish or unusual expenditures compared with past spending levels. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(C). A taxpayer who signs a return is generally charged with constructive knowledge of its contents. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228.

Petitioner was college educated; however, her degree was in social welfare rather than business or accounting. She was not working and had no income during 1997 and was not involved in Mr. Schoenbrun's work or finances. She was aware that he was having some financial difficulties, but he was paying the household and living expenses, albeit untimely. More specifically, Mr. Schoenbrun intentionally kept information about his tax debts

from petitioner and intentionally deceived her into believing that he would pay the 1997 tax liability if she would sign the 1997 joint return.

Petitioner did not have any lavish or unusual expenditures and was a student with student loans and was receiving financial assistance during the 1997 tax year. Petitioner was aware that the 1997 joint return had an unpaid balance due to the Government but believed that Mr. Schoenbrun would pay that balance in the same manner as he had been paying the couple's other living expenses.

Under these circumstances, petitioner did not know and had no reason to know when the income tax return was filed that the tax liability would not be paid.

Economic hardship may exist if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses. Rev. Proc. 2003-61, sec. 4.02(1)(c). The Commissioner uses the factors provided in section 301.6343-1(b)(4), Proced. & Admin. Regs. The pertinent factors to be considered here are: (1) Petitioner's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing (including utilities, homeowner's insurance, homeowner's association dues, and the like), medical expenses (including health insurance), transportation, and current tax payments

(including Federal, State, and local); (3) the cost of living in the geographic area in which petitioner resides; and, (4) any other factor that petitioner claims bears an economic hardship. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

At the time of trial petitioner had three dependents, two preschool children and her mother. Her boyfriend (the father of her children) also lived in her home and shared some of the living expenses. Respondent, following standard guidelines for basic living expenses, determined that petitioner's necessary monthly living expenses should be $4,877. As one of the criteria for denying relief, respondent relied on the fact that petitioner's mortgage, interest, utilities, and property taxes exceeded the "necessary" amount and, additionally, that her boyfriend shared some of the household living costs.

Petitioner contends that respondent's reliance on the $4,877 figure is misplaced because respondent used figures for a family of four, whereas petitioner's household comprises five. Respondent's reliance on monthly living expense calculations for a family of four does appear to be misplaced in the light of the fact that respondent acknowledges that petitioner's boyfriend contributed to the household costs. Next, petitioner points out that her salary from the unified school district has decreased precipitously since respondent reviewed and denied her request

and that announced cutbacks will cause further reductions in her salary.

Under these circumstances, we find respondent's determination that this factor weighs against relief to be of little import and that petitioner's financial circumstances should not have resulted in denial of relief.

In summary, all criteria are favorable to her entitlement to equitable relief from joint liability. With respect to her financial circumstances, they do not indicate a standard of living that is much if in any amount in excess of the minimal standards by which respondent measures this criterion. This is especially so where, as here, respondent used the wrong standard by not including the fifth person in the analysis. Although respondent determined that petitioner knew or had reason to know that Mr. Schoenbrun could not pay, petitioner provided ample evidence at trial showing that she did not know and that the information was intentionally kept from her. We hold that petitioner is therefore entitled to equitable relief from the 1997 joint tax liability under section 6015(f).

To reflect the foregoing,

Decision will be entered

for petitioner.